# Richmond

## DARBY COAL MINING CO. v. SHOOP.

### November 12, 1914.

1. VERDICTS—*Jury Properly Instructed—Negligence of Defendant— Preponderance of Evidence.*—Where a personal injury case,has been fairly submitted to the jury under proper instructions from the court, their verdict will not be disturbed where it cannot be said, as a matter of law, that the injuries complained of were not more naturally to be attributed to the negligence of the defendant than to any other cause.

2. MASTER AND SERVANT—*Safe Place—Proximate Cause—Contributory Negligence—Questions for Jury.*—Whether or not a master has discharged his duty of exercising ordinary care to maintain a reasonably safe place in which his servant is to work, and, if not, whether his negligence is the proximate cause of the injury to his servant, and whether the servant has been guilty of contributory negligence, are questions for the jury whose verdict will not be disturbed unless plainly wrong.

3. MASTER AND SERVANT—*Negligence of Master—Assumed Risk.*—Any failure on the part of the master to observe, for the protection of his servant, that reasonable degree of care which the circumstances of the particular case demand is actionable negligence, and is not within the influence of the doctrine of assumed risks.

4. INSTRUCTIONS—*Read as a Whole—Case at Bar—Misleading—Partial View.*—The instructions, in the case at bar, when read as a whole were not misleading and incomplete as to the duty of the plaintiff to inspect the roof of the mine where he was to work, nor do they ignore the defendant's theory that it had the right to abandon places in its mines which it had completed according to its plan of work, but they fully and fairly submitted these and other questions to the jury and as favorably to the defendant as it could have reasonably asked.

5. DAMAGES—*Number and Dependence of Family—Case at Bar.*—A verdict of $3,000 for a permanent personal injury to a young married man twenty-nine years of age will not be set aside

simply because he testified that he had one child, five years of age, which was at his father's, especially where, in asking that the verdict be set aside, no charge or suggestion was made that the verdict was excessive.

Error to a judgment of the Circuit Court of Lee county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The following instructions were given on motion of the plaintiff:

"1. The court instructs the jury that if they believe from the evidence that the plaintiff was assistant to G. F. Osborne, and that Osborne was a machine runner in the employment of the defendant company, at the time of the accident, and that his duties were to go from place to place with Osborne, and assist Osborne in making cuttings, whenever and wherever they were told to do so by Mart Merritt, the machine foreman of the company, it was the duty of the company to exercise all reasonable care to provide that the place or places through which he had to go in order to reach and do his work, and the place at which he was to do this work, should be made reasonably safe, and if the jury shall believe that the defendant did not perform this duty, and that such failure to perform said duty was the proximate cause of the injury complained of, the jury shall find for the plaintiff and assess his damages at such sum as the jury under the evidence shall believe he is entitled to recover.

"2. The court instructs the jury that if they shall believe from the evidence that the negligence of the defendant company was the proximate cause of the injury complained of in this action, the defendant company is not relieved from liability on account of the fact that the

negligence of a fellow servant of the plaintiff also contributed to the injury.

"4. The court instructs the jury that if they shall believe from the evidence that John Edwards, the mine boss of the defendant, knew, or by the exercise of ordinary care should have known, that the roof of the mine at the place where the accident occurred was loose and liable to fall at any time, then it became his duty to use all reasonable care to see that the slate was secured or taken down, or that all employees who were sent to work in that part of the mine were warned of the said danger, if danger there was, and if the jury shall believe from the evidence that Mart Merritt told said Osborne to take his machine and go to that section of the mine and cut all the coal that Conken had ready to cut, and the jury shall further believe that in pursuance of said instructions it was proper for Osborne to inquire of Conken what places he had ready to cut, and that Conken informed Osborne that the place in question was the first to be cut, then the jury should find that the said Osborne and the plaintiff went into said place where the accident occurred in the performance of their duties, and the defendant can not be excused from its duty to have used all reasonable care as defined in the first part of this instruction.

"5. In determining the question of negligence the jury should consider the situation and conduct of both parties at the time of the injury, and if it was caused by defendant's negligence, without any greater want of ordinary care on the part of the plaintiff than was to be reasonably expected under all the circumstances, then the plaintiff is entitled to recover."

The following instructions were given on motion of the defendant:

"No. 4. The court tells the jury that when a servant

enters the services of the master, he assumes all the ordinary risk of such service, and, also, as a general rule, assumes all risk from causes which are known to him, or should be readily discernible by a person of his age or capacity, in the exercise of ordinary care. When the employee is placed by his employer in a position where he can see, or with reasonable intelligence and care find and disclose the dangers of such position, and is a mature man, doing the ordinary work which he has engaged to do, and whose risks are obvious to any one, he assumes the risk of the employment, and no negligence can be imputed to the employer for an accident to him therefrom.

"No. 5. The court tells the jury that the employee's right to act upon the presumption that his employer has done his duty in furnishing him a reasonably safe place in which to work does not exist where the employee is affected with notice of facts and circumstances which would indicate to any reasonably intelligent man that the presumption was unjustifiable.

"No. 11. The court tells the jury that by proximate cause is meant the least negligent act contributing to the injury, and without which such injury would not have resulted.

"The court tells the jury that the burden of proof is on the plaintiff to prove by a preponderance of the evidence that the defendant is guilty of the negligence charged, but the burden is similarly on the defendant to prove contributory negligence on the part of the plaintiff."

The court on its own motion gave the two instructions next following, instruction (A) being defendant's instruction No. 10 refused by the court, but given as so modified by the court.

"(A) The court tells the jury that if they believe from

the evidence it was the duty of both Shoop and Osborne to use ordinary care to inspect their working place and see if the same was in a reasonably safe condition, including the mine roof over that part of the room where they were cutting coal and loading and unloading or standing their tools and machinery, and if such inspection did disclose, or if made would have disclosed, to an ordinarily careful and intelligent man engaged in their occupation, situated as they were, and under all the circumstances as they appeared to them, that said roof was dangerous, it was the duty of both men to leave such working place and stay away until after such roof had been properly protected, or until after they had been assured by defendant that it had been protected, and if the jury believe from the evidence that the plaintiff, in the exercise of such care, inspected the roof and found it defective, or would have found it so if he had inspected, but that he failed to inspect it; or if they should believe from the evidence that plaintiff thought it was the duty of Osborne only to make such inspection, and he relied upon Osborne to do so, and Osborne did make such inspection and found the roof defective and communicated this to plaintiff, and that plaintiff failed to leave said working place, and that his failure to leave it was the proximate cause of the accident, then plaintiff was guilty of contributory negligence and can not recover."

"(B) The court tells the jury that if you believe from the evidence that the roof over the working place of Shoop was dangerous, and that same could have been discovered by Shoop by the exercise of ordinary care on his part, and you further believe from the evidence that Shoop failed to use ordinary care and was injured oy reason of such failure, you will find for the defendant. But if you believe from the evidence that Shoop did use ordinary care, and you further believe from the

evidence that it was not the duty of Shoop to inspect the roof over his working place by sounding the roof with some instrument, and that the danger, if any, was not open and obvious, and that Shoop did not know of said danger, if any, but the defendant did know of said danger, or could have known of said danger by proper inspection, and that the plaintiff Shoop was injured because the defendant failed to warn him of said danger, you will find for the plaintiff and assess such damages as you believe he is entitled to recover under the evidence."

*R. T. Irvine* and *Bullitt & Chalkley,* for the plaintiff in error.

*E. M. Fulton* and *C. R. McCorkle,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

Plaintiff in error is a corporation engaged in the mining of coal in Lee county, Virginia, and while so engaged it had in its employment, as a hostler, or helper, on coal mining machines, defendant in error, W. H. Shoop, whose duty it was, among others, to help take coal mining machines into the working rooms of the mine, help unload same from the trucks thereunder, help undercut the coal with the machine, remove and throw back the coal dust, and help reload the machine on to the trucks, and to place the tools thereupon and remove same from the working room. While so engaged in reloading one of said machines upon its trucks, and placing tools thereupon in a room, or neck of a room with one Garrett Osborne, the machine runner and a fellow-workman of Shoop, a large piece of slate, about

seven feet wide, nine feet long and six inches thick, fell
from the roof of the room or neck on the machine and
on Osborne and Shoop whereby each of them were hurt,
Shoop sustaining certain injuries to his hip and hand, as
well as other minor injuries. To recover damages for
his injuries, Shoop brought this action against plaintiff
in error and at a trial of the cause the jury returned a
verdict for $3,000, in favor of Shoop, which verdict the
court refused to set aside and entered judgment thereon,
to which judgment plaintiff in error was awarded this
writ of error.

For convenience defendant in error will be spoken of
in this opinion as plaintiff, and plaintiff in error as de-
fendant.

The assignments of error relied on for a reversal of
the judgment complained of are three—*First,* the refusal
of the court to set aside the verdict as contrary to the
law and the evidence; *Second,* the admission of certain
evidence for the plaintiff over the objection of the de-
fendant; and, *Third,* the giving and refusing of certain
instructions to the jury.

Plaintiff bases the liability of the defendant to him in
this action upon the ground that the place in which he
was sent to work was in an unsafe and dangerous condi-
tion, of which the defendant, through its mine foreman,
had knowledge, and he, the plaintiff, was ignorant; while
the defendant defends the action upon the grounds, (1)
that it was not guilty of negligence; (2) that the plain-
tiff was guilty of contributory negligence; and (3) that
he assumed the risk of the danger of his employment.

It appears that while the plaintiff, twenty-nine years
of age, was a miner of thirteen years experience, he had
been in the employ of the defendant but three days when
the accident to him of which he complains happened.
The coal cutting machines in use by the defendant, and in

the operation of which plaintiff was put to work as a helper, are operated by two men, one of whom is called the machine runner and who has charge of the work, and with him is a helper or hostler. One Mart Merritt was the defendant's machine foreman, and had general charge of all machine crews, directing them where to work, etc., and one John Edwards was the defendant's general mine foreman.

On the morning of the third day of plaintiff's employment, he was directed to hostle for Osborne, a machine runner, who had been ordered by Merritt to take his machine to a certain place in the mine, known as second right entry off of third face heading, and "cut all the coal of John Conkens that was ready for (cutting." Conken was a contractor who had a number of men working for him, and had charge of a number of working places on that entry. When plaintiff and Osborne arrived at Conken's place with the machine, they found Conken there, and Osborne inquired of him what places he had ready for cutting. He told Osborne and plaintiff that second roadway or neck of No. 3 room was ready, and that by the time they finished that place he would have two more places ready for them.

It appears that the regular manner of operating the rooms in the mine was to drive two parallel roadways, or necks, to a distance of from 30 to 31 feet from the entry so as to leave a pillar of coal 21 feet in length after cutting a "break-through" between the two necks, which "break-throughs" were ordinarily driven from both sides at the same time, and after the necks had been driven the necessary distance in the face, the machine would make "cross-cuts" for the "break-throughs." Before taking the machine into this second roadway or neck, Osborne went in, and Conken went into the adjoining neck (first roadway), and by sounding back and

forth to each other through the intervening pillar of coal and communicating with each other through the plaintiff, who remained out on the entry, they ascertained that the neck would have to be driven some distance further in the face before it would be far enough to catch the "break-through" which had already been started from the first roadway. Osborne, testifying for plaintiff, states that he found the place cleaned up and ready for the cut, "as good as the average clean-up;" that while he was in the neck he examined the roof, and found some draw slate some distance back from the face which sounded "drummy" and seemed to be a little loose, but he concluded that there was no immediate danger of its falling, being led to this conclusion by the presumption that the contractor in charge of the room would have taken it down if it could have been gotten down. Up next to the face of the coal, and for a distance of about seven feet back from the face, Osborne found the roof to be solid sandstone, and he and plaintiff took the machine in, and, before making the cut, plaintiff examined the roof up next to the face of the coal and entirely over the space necessary to be occupied by him while the machine was in actual operation, and found it solid sandstone, but did not inspect the roof further back towards the entry. As already stated, they made the cut, loaded the machine back on the trucks and were loading up their tools when the slate fell on them, causing the injury complained of in this action. At the moment the slate fell both men were at or about the point where the cutter head part of the machine joins the motor part, or about the middle of the trucks, which point was from 20 to 23 feet back from the face of the coal, depending upon the distance the trucks rolled back towards the entry when the machine was loaded. It further appears that in loading the machine back on the trucks it was necessary

for plaintiff to place a jackprop at a point near the front
end of the trucks, a distance of from twelve to fourteen
feet from the face, and it is the contention of the defend-
ant that a part of the slate which fell must have fallen
from this point, but this contention cannot be considered
since Osborne, testifying for the plaintiff, stated that no
slate could have fallen from the point where the jack-
prop was set.

Until about three or four days prior to the accident,
this part of the mine was being worked by Wm. Wallen,
who was also a contractor with a number of men working
for him, and about a week or ten days prior to the acci-
dent and when Wallen was loading out the last cut made
in this neck, he examined the roof and found it to be bad,
and on account of this fact and the further fact that the
roadway was steep, and presuming, without measure-
ment, that the place had been driven in far enough, he
decided to abandon the neck and drive the "break-
through" entirely from the first roadway, instead of
driving it partly from the second roadway, as would have
been done ordinarily.  Wallen, as it appears, reported
the facts, including the condition of the roof, to Edwards,
the mine foreman, who consented to the change in the
plan of working the room, and Wallen left about a mine
carload of coal remaining in the neck when he loaded out
the last cut, to warn the machine men that the place had
been abandoned, but neither Wallen nor Edwards said
anything about the place to Conken when the work was
turned over to him, nor to anyone else, so far as the evi-
dence discloses.

On the morning of the accident to plaintiff, one Frank
Hickson, a "back-hand" working under Conken, went
into the mine before Conken, and finding the pile of coal
in the neck loaded it up in a car and pushed it out, and
reported the same to Conken before the plaintiff and

Osborne arrived with the cutting machine shortly afterwards, when the conversation between them and Conken, already related, took place.

The foregoing are the salient facts in the case appearing from the evidence considered as upon a demurrer thereto, and from these facts it is readily to be observed that the liability, if any, of the defendant to the plaintiff for damages in this action has to be based upon the ground that the place in which the plaintiff was sent to work was in an unsafe and dangerous condition; that the defendant, through its mine foreman, Edwards, had actual knowledge of the danger; that the plaintiff was ignorant of the danger, and was without fault in not discovering it; that the defendant negligently failed to warn the plaintiff of the danger, or of the change in its plans with reference to the working of the place in which plaintiff was directed to work; and that such failure was the proximate cause of the injuries to plaintiff.

On the other hand, it is insisted by the defendant that, even if it was guilty of negligence in failing to exercise ordinary care to provide and maintain a reasonably safe place for the plaintiff to do the work of his employment, he was guilty of contributory negligence in failing to exercise due care for his own safety, and that by reason of his failure to exercise such care he is without the right of recovery of damages for his injuries in this action.

These being the issues of fact presented by the evidence, we cannot say as a matter of law, that the injuries complained of were not more naturally to be attributed to the negligence of the defendant than to any other cause, and, therefore, it only remains to be determined whether or not those issues have been, by the trial court's rulings in the admission or rejection of evidence, and in giving or refusing instructions, fairly submitted to the consideration of the jury.

At the trial the court gave four instructions to the jury at the instance of the plaintiff, numbered 1, 2, 4 and 5; two of the court's own motion, marked respectively "A" and "B"; and three of the instructions asked by the defendant, numbered 4, 5 and 11, (all of which instructions are hereinbefore set out), but refused to give instructions Nos. 1, 2, 3, 6, 7, 8, 9 and 10, asked by the defendant. To the giving of plaintiff's instructions Nos. 1, 2, 4 and 5, the court's instructions "A" and "B", and the refusal of defendant's instructions Nos. 1, 2, 3, 6, 7, 8, 9 and 10, the defendant duly excepted, and these several rulings of the court are assigned as error.

"Whether or not a master has discharged his duty of exercising ordinary care to maintain a reasonably safe place in which his servant is to work, and if not whether his neglect is the proximate cause of the injury to his servant, and whether the servant has been guilty of contributory negligence, are questions for the jury, whose verdict will not be disturbed unless plainly wrong." *Black* v. *Va. P. Cement Co.*, 106 Va. 121, 55 S. E. 587, and authorities cited.

In the report of the case above cited, 104 Va. 450, 51 S. E. 831, the opinion by Keith, P., says: "It is true that a workman or servant on entering into an employment, by implication agrees that he will undertake the ordinary risks incident to the service in which he is to be engaged. But it is also true that a servant does not assume any risk which may be obviated by the exercise of reasonable care on the master's part. Labatt on M. & S., secs. 1 and 2.

"Negligence, in a legal sense, is a 'failure to observe for the protection of the interests of another person that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury.' Cooley on Torts, p. 630.

"Any failure upon the part of the master to observe for the protection of his servant that reasonable degree of care which the circumstances of the particular case demand is actionable negligence, and is not within the influence of the doctrine of assumed risks."

While the defendant in the case in judgment assigns as error the giving of plaintiff's instructions Nos. 1, 2, 4 and 5, and the court's own instructions "A" and "B", specific objection is only urged against instructions Nos. 1 and 2 and instructions "A" and "B"; it being claimed that these instructions are misleading and incomplete, in that they ignore the duty of the plaintiff to have made an inspection of the roof of the mine where he was directed to work, or else be bound by Osborne's inspection. We do not so interpret those instructions when the instructions given by the court are read as a whole, which presumably the jury did; and not only so, but it is to be observed that instruction "A" given by the court plainly told the jury, in a manner that they could not have misunderstood it, that if they believed that it was plaintiff's duty to have inspected the roof of the room in which he was sent to work, and that such inspection disclosed, or if made would have disclosed, the danger, but that he failed to make such inspection, and that such fault was the proximate cause of his injury, he was guilty of contributory negligence, and could not recover. We do not think that the jury could have been misled by the instructions on the question whether or not it was plaintiff's duty to make inspection of the place in which he was put to work, and if it was his duty under the circumstances disclosed by the evidence to have made such inspection and he failed to make it, it was immaterial whether he relied upon some one else to make it or not, the jury being told in the instructions that if he failed to perform his duty in this respect he was guilty of contributory negligence.

Defendant makes objection to plaintiff's instruction No. 4 solely on the ground that it ignores defendant's theory that it had the right to abandon places in its mines which it had completed according to its plan of work, and was no longer required to keep them in a safe condition.

It is not questioned that defendant "had the right to abandon places in its mine which it had completed according to its plan of work," but the question presented by the evidence was, if the room into which plaintiff was directed to work had, in fact, been abandoned, there being no sufficient visible indications of its abandonment, whether or not it was the duty of the defendant to use reasonable care for the protection of its servants who were sent there to work. In other words, if the room in question had been, in fact, abandoned and there were no visible indications of its abandonment, was it or not the duty of the defendant to give notice and warning to all of its servants who, having no knowledge of the changed plans, would be likely to be led into the room in the performance of their duties?

The instruction, No. 4, was given in the alternative, telling the jury that it was the defendant's duty to use reasonable care to see that the slate overhanging the roof of the room in question was secured or taken down, or to warn its servants of the danger; and the instruction also submitted to the jury the question whether or not the plaintiff and Osborne went into this room to work in the course of the performance of the duties of their employment. The evidence in the case tended to prove a peculiar situation in the room in which plaintiff was sent to work and where he was injured, and we are of opinion that this instruction was not only proper, but necessary to guide the jury in the consideration of this evidence. It was for the jury to say whether or not the defendant

could have, by the exercise of reasonable or ordinary care, known of the danger to which the plaintiff was subjected at the time and place where and when he was injured, and to find, if the defendant could have known of the danger by such care, that it knew of the danger.

It was also for the jury to determine whether or not the negligence of the defendant was the proximate cause of plaintiff's injury, and whether or not he was guilty of contributory negligence. These questions of fact were, by the instructions given by the trial court, fully and fairly submitted to the jury, and as favorably to the defendant as it could reasonably have asked; therefore, we are of opinion that there was no error in the instructions given, or in refusing further instructions in the case.

The remaining question in the case is whether or not it was reversible error of the trial court in permitting certain evidence of the plaintiff's family dependent upon him for support to be introduced.

This evidence was given by plaintiff himself on examination as a witness in his own behalf. He was asked: "What is your age, Mr. Shoop? A. Twenty-nine. Q. Are you married? A. Yes. Q. Have you a family? A. Yes, sir. Q. How many children have you? A. Haven't any child with me. My father has one. Just one living. Q. What is its age? A. Its age is five years."

Exception was not taken to the question which brought the answer from the plaintiff that he was married, but to the evidence given by him that he had a child which was living with his father. Defendant in asking that the verdict of the jury be set aside, made no charge or suggestion that the damages assessed in favor of the plaintiff were excessive.

While the authorities condemn the practice in actions for personal injuries of permitting evidence of the plain-

tiff's family dependent upon him for support to be introduced, and hold that such evidence is not admissible, the latest expression by this court on that subject being in *Simmons* v. *Southern Ry Co.*, 105 Va. 651, 55 S. E. 459, we do not think that the evidence in question here is of such character and importance as to bring it within the letter or spirit of the rule sanctioned in the case just referred to, for it does not seem reasonable to infer or even to suppose that the jury could have been influenced in assessing damages to the plaintiff for his injuries by the mere fact that he testified, "Haven't any child with me. My father has one. Just one living." The fact does not appear in the evidence, but it is a reasonable inference to be drawn from the statements made by the plaintiff, that his only child is living permanently with the plaintiff's father, and had been taken by the latter to care for and raise. The evidence in the case shows very clearly that the injuries of which plaintiff complains are not only serious in their nature, but of a permanent character, and such as will follow him through life, seriously impairing his capacity to perform the physical labor upon which he must depend for his support, and when these facts are considered, together with his comparative youth, little or no room was left the defendant for complaint of the amount of damages awarded him by the jury.

We are of opinion that there is no error in the record for which the judgment of the trial court should be reversed, and it is, therefore, affirmed.

*Affirmed.*