# THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF VIRGINIA, ET AL.

## V.

## H. LEE DOWDY, JR.

Record No. 850005

March 4, 1988

Present: Poff, Compton, Stephenson, Russell, Thomas and Whiting, JJ.

*Palmer S. Rutherford, Jr. (James C. Howell; Willcox & Savage, P.C.*, on briefs), for appellants.
*Carter B.S. Furr (Jett, Agelasto, Berkley, Furr & Price*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

This is the appeal of a damage suit in which the plaintiff seeks recovery for mental suffering and associated physical illness. The dispositive question is whether the common law of Virginia recognizes a tort of negligent supervision of an employee by the employer and its managerial personnel.

In 1983, appellee H. Lee Dowdy, Jr., brought this action against the appellants The Chesapeake & Potomac Telephone Company of Virginia, Leslye A. Miller, and Frank E. Ragland (sometimes collectively, C&P). The plaintiff had been an employee of C&P as a communications representative in C&P's Norfolk office. Miller and Ragland, C&P employees, had been the plaintiff's supervisors.

In five counts, the plaintiff sought recovery for: (1) intentional and malicious infliction of bodily harm and emotional distress; (2) conspiracy to "unlawfully, purposely, willfully and maliciously"

injure the plaintiff; (3) wrongful interference with the contractual relationship between plaintiff and the company; (4) negligent supervision resulting in aggravation of physical and mental suffering; and, (5) "reckless, willful and malicious" conduct requiring assessment of punitive damages.

Pretrial, the court denied a motion for summary judgment filed by C&P which asserted that federal labor law preempted State jurisdiction. The case was tried to a jury in 1984 over a six-day period. At the conclusion of his evidence, the plaintiff nonsuited counts 2 and 3, and the trial court sustained C&P's motion to strike the plaintiff's evidence on counts 1 and 5. A like motion by C&P on count 4 was overruled. The jury found in favor of the plaintiff and assessed his damages at $44,000, upon which the trial court entered judgment.

We awarded C&P this appeal from the October 1984 judgment order. We limited the issues to consideration of (1) the court's denial of C&P's pretrial motion for summary judgment and (2) the court's recognition of a cause of action for negligent supervision. We also awarded an appeal on plaintiff's assignments of cross-error challenging the striking of counts 1 and 5 and raising an issue of damages in connection with one instruction.

■ We do not reach for decision the jurisdictional issue because of insufficiency of the record. C&P contends that the plaintiff was a member of a labor union which was the recognized bargaining unit for all C&P employees. As such, C&P argues, he was subject to the benefits and obligations of a general agreement in effect between the union and C&P. C&P contends that in his pleadings plaintiff acknowledges he was engaged in arbitration proceedings, pursuant to the bargaining agreement, for alleged wrongful termination of his employment. C&P asserts that the conduct of which plaintiff complains in the present action is encompassed fully by the provisions of the agreement and that federal law preempts state-law claims of the nature involved in this action.

C&P's assignment of error on this issue states that the trial court erred in failing to grant summary judgment "on the issue of the exclusivity of the remedy contained in the collective bargaining agreement between Defendant C & P and the Plaintiff's union." But the agreement on which this contention is based is not a part of the record on appeal and was never introduced in evidence. Indeed, the record shows that only several pages of this apparently lengthy document were exhibited to the trial judge;

those pages, never marked as an exhibit, are copied in the appendix.

Even though the assignment of error, as well as C&P's argument on brief, is keyed to the contents of the agreement, C&P changed its position during oral argument, stating that the contents of the document were irrelevant to a decision of the issue. The argument now is that the mere existence of such an agreement is dispositive of the preemption question. Without ruling on the validity of that new contention, we refuse to address an argument which focuses on the contents of a document which is not before us.

█ Moving to the dispositive issue in the appeal, we will set the stage by summarizing the trial court's instruction placing the theory of negligent supervision before the jury. The court charged the jury that "defendants were under a duty to exercise reasonable care under all the circumstances then and there existing in their supervision of plaintiff." The court further told the jury that if "the defendants knew or in the exercise of reasonable care should have known that their conduct would result in stress that aggravated plaintiff's illness, but thereafter acted unreasonably in supervising plaintiff so as to aggravate his illness, then this constituted negligence." Finally, the court required the jury to find by clear and convincing evidence that any such negligence was the proximate cause of plaintiff's damages, if any.

The plaintiff had been employed by C&P for approximately twelve and one-half years when he was discharged by the company in July 1982 for excessive absenteeism. According to the evidence, he missed the following work days: in 1978, 49 days; in 1980, 11 days; in 1981, 103 days; and in 1982 prior to discharge, 60 days. The plaintiff contended that he was prevented from working regularly because of a physical illness known as spastic colitis, also called "irritated bowel syndrome." According to the plaintiff, the illness caused severe diarrhea, constant stomach cramping, and nausea. He said attacks of the malady were brought on by "undue stress."

As a communications representative, the plaintiff was involved with the design, layout, pricing, coordination, sale, and installation of telephones and telephone equipment for commercial customers. According to the plaintiff, he was successful in his job until he "encountered" defendants Miller and Ragland as supervisors. Ragland became a "second-level" supervisor over plaintiff in late

1977 while Miller arrived on the scene as a "first-level," immediate superior in October 1981. According to the plaintiff, he "had spotty problems" with his illness prior to 1977. His condition worsened, however, in early 1978 and continued to deteriorate because of the stress imposed upon him by the company through Miller and Ragland, he testified.

The plaintiff asserted that the conduct of Miller and Ragland demonstrated a change in attitude of the company toward him and his job, indicating to him that "a case was being made and built" to terminate him as an employee. For example, plaintiff said there was "continual nit-picking of every move" he made and "playing down of everything positive." According to the plaintiff, "If anything good happened, I couldn't have anything to do with it. But anything bad that happened, I had everything to do with it." As the result of C&P's effort to get "rid" of him while he was "scrambling, trying to save a career," the plaintiff testified, his former satisfactory performance evaluations in the areas of "quality, quantity, and dependability" became "totally unsatisfactory." He said that when his condition worsened in 1982 as more stress was visited on him, he was threatened with termination if he missed any more time from work and this exacerbated his illness.

He contends defendants were on "full notice" that their "harassing actions" toward him affected his physical condition adversely. He asserts that defendants were guilty of misfeasance and intentional conduct in causing his condition to deteriorate. He also argues the defendants were guilty of nonfeasance in failing to assist him despite many requests he made to the company to resolve his medical problems.

We have viewed the evidence in the light most favorable to the plaintiff in composing the foregoing summary of the facts, and we will focus on that evidence in deciding the question of law presented. Nonetheless, fairness demands that a brief summary of C&P's side of the case be stated.

C&P did not dispute that it was aware of plaintiff's illness or that he was discharged for excessive absences from work. C&P presented evidence, however, that plaintiff performed his job poorly. For example, evidence showed that he missed time from work unnecessarily, maintained "unprofessional" work habits, and adversely affected the morale of co-workers. C&P also presented evidence that, aware of the plaintiff's illness, extensive efforts were made, particularly by defendant Miller, to assist plaintiff in cop-

ing with the demands of his employment, given his emotional problems. For example, witnesses testified that defendant Miller "spent hours on end" working with the plaintiff and that she demonstrated "the patience of an angel" when trying to make the plaintiff "a viable part of the work group."

The plaintiff contends the trial court properly ruled that he was entitled to establish and to recover in an action for negligent supervision. Asserting he is not suing for wrongful discharge, the plaintiff points out that Virginia common law "clearly allows recovery for the negligent infliction of the emotional harm and resulting physical aggravation of plaintiff's illness that results therefrom." He relies on *Hughes* v. *Moore*, 214 Va. 27, 197 S.E.2d 214 (1973) (recovery allowed for fright or shock accompanied by physical injury where there is negligent conduct, notwithstanding lack of physical impact, provided there is proof by clear and convincing evidence of causal connection between negligent act, fright or shock, and physical injury). He also relies on *Womack* v. *Eldridge*, 215 Va. 338, 210 S.E.2d 145 (1974) (emotional distress resulting from non-tactile tort may be compensated provided tort is intentional or reckless, conduct is outrageous and intolerable, alleged wrongful conduct and emotional distress are causally connected, and distress is severe). In addition, plaintiff relies on *Naccash* v. *Burger*, 223 Va. 406, 290 S.E.2d 825 (1982) (parents held entitled to recover for emotional distress, as exception to general rule of no recovery for such damages absent tortiously caused physical injury, where emotional distress was direct result of circumstances linking erroneous medical report to birth of a fatally defective child). Also, the plaintiff relies on a number of Virginia cases where employees have been permitted to recover against employers for breach of the duty to provide a safe place to work. *See, e.g., Darby Coal Mining Co.* v. *Shoop*, 116 Va. 848, 83 S.E. 412 (1914) (worker injured underground in coal mine by piece of falling slate).

Based on these and other authorities, plaintiff contends recovery should be allowed because "it was established that the defendants were on full notice that the stress and pressure that they were applying to the plaintiff were directly and adversely affecting his physical condition," and a jury should be permitted to conclude "this to be unreasonable conduct on the part of the employer." We disagree.

■ There can be no actionable negligence unless there is a legal duty, a violation of the duty, and a consequent injury. *Trimyer* v. *Norfolk Tallow Co.*, 192 Va. 776, 780, 66 S.E.2d 441, 443 (1951). In Virginia, there is no duty of reasonable care imposed upon an employer in the supervision of its employees under these circumstances and we will not create one here.

■ No valid analogy can be drawn between this case, in which an employee had difficulty coping or contending with the circumstances of his employment, and cases like *Hughes, Womack,* and *Naccash,* which involved either fright or shock, intentional misconduct, or wrongful acts egregious enough to warrant creating an exception to the tactile tort rule. *See Sea-Land Service, Inc.* v. *O'Neal,* 224 Va. 343, 297 S.E.2d 647 (1982). *Cf. Atchison, T. & S.F.R. Co.* v. *Buell,* 480 U.S. 557, 568-70 n.16-21 (1987) (harassment and intimidation of railroad employee, in which common-law developments in cases of mental suffering reviewed). And, there is no persuasive similarity between this case and the safe-place-to-work cases cited by the plaintiff which deal with risks peculiar to the employment causing physical injury to the employee. Consequently, we hold that the trial court erred in submitting the case to the jury on a theory of negligent supervision.

■ Turning to the cross-error, we conclude there is no merit to the issues plaintiff raises. As we already have indicated, the evidence was insufficient to support a finding that C&P intentionally, willfully, or maliciously inflicted bodily harm or emotional distress upon the plaintiff to warrant recovery of either compensatory or punitive damages. Thus, the trial court did not err in striking the plaintiff's evidence on counts 1 and 5. Finally, the alleged error in the damage instruction has been rendered moot by our decision on the liability aspects of the case.

Accordingly, the judgment for the plaintiff will be reversed and final judgment in favor of the defendants will be entered here.

*Reversed and final judgment.*