## CIRCUIT COURT OF THE CITY OF RICHMOND

Lois Marshall, Adm'x.
of the Estate of
Jack E. Marshall, Deceased

v.

City of Richmond et al.

January 10, 1989

Case No. LL-2883-3

By JUDGE T. J. MARKOW

This case is before the court on the demurrer, special plea of immunity, and motion to strike responding to the amended motion for judgment.

This is a claim for wrongful death of plaintiff's decedent asserted against the Sheriff of the City of Richmond and one of his deputies. Plaintiff alleges that on February 24, 1987, Marvin Mundy was sentenced to a six-month term in the City Jail by the General District Court of the City of Richmond for possession of a concealed weapon, an Uzi semi-automatic pistol. Plaintiff further alleges that on or about March 15, 1987, Mundy was prematurely and negligently released by defendants from the custody of the City Jail and that approximately a month later, as a proximate result of Mundy's premature and negligent release, Mundy robbed and killed plaintiff's decedent.

In this court's letter opinion of February 22, 1988,[1] which addressed issues raised by the original motion for judgment and defendant's demurrer thereto, this court held that defendants owed no duty to protect a particular member of the general public from harm unless the facts create a special relationship between the Sheriff and jailer and that member of the public or the class to which he belongs. The court concluded that no facts had been plead creating such a special duty or special relationship which could impose liability on the Sheriff. Consequently, the court found the issue of duty to be dispositive and did not determine issues of proximate cause, sovereign or judicial immunity.

Plaintiff was granted leave to amend her pleadings, which she did. Meanwhile, in September of this year, the Virginia Supreme Court issued its opinion in the case of *Fox v. Custis*, 236 Va. 69 (1988), which dealt with a tort action against parole officers who chose not to arrest a parolee in violation of his parole. The parolee then committed various violent offenses generating a negligence and a § 1983 action.

The court believes that *Fox v. Custis* does shed some light on the difficult issues raised on demurrer and that it does establish that § 319 and § 315(a) of the Restatement of Torts are applicable rules of law in Virginia, relevant to the facts of this case.

However, the facts pled in the motion for judgment fail to establish the special relationship between Mundy and the defendants as required by 315(a) and 319 of the Restatement, and therefore, the demurrer must be sustained.

In a negligence case, neither the issue of proximate cause nor immunity defenses become germane until it has been established that a defendant owes to a plaintiff a duty of care which has been breached. There can be no actionable negligence unless there is a legal duty, a violation of the duty, and consequent damage. *Chesapeake and Potomac Tel. Co. v. Dowdy*, 235 Va. 55, 61, 365 S.E.2d 751, 754 (1988); *Trimyer v. Norfolk Tallow Co.*, 192 Va. 776, 780, 66 S.E.2d 441, 443 (1951). The threshold question in this case, one that is purely a question of law, is

[1] 12 Va. Cir. 141. [Reporter's Note]

whether a duty of care existed on the part of these defendants to this plaintiff.

Ordinarily, a person has no duty to control the conduct of third persons. The principle is set forth in the Restatement:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless:
>     (a)   a   special   relation   exists   between the actor and the third person which imposes a duty upon the actor to control the third person's conduct . . . .

Restatement of Torts (Second) § 315 (1965). *See* Prosser and Keeton, The Law of Torts, § 56 at 383-85 (5th ed. 1984). In turn, the special relationship mentioned in § 315(a) are detailed in *Restatement* §§ 316-319.

As the Supreme Court noted in *Fox v. Custis*, 236 Va. 69 (1988), § 319 applies to negligent release cases and provides that "one who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." *Id.* at 512. In *Fox*, the court determined that a special relationship under § 319(a) did not exist because there was no custodial relationship within the meaning of § 319. That conclusion is inapplicable to the instant case, however, since here there clearly was a custodial relationship within the meaning of § 319.

In the instant case, the court is satisfied that if there were ever an example of "taking charge" of an individual, defendants Winston's and Troublefield's act of confining Mundy in the City Jail was such an exercise of dominion. However, it is the second half of the § 319 special relationship equation that is fatally deficient in this case. For reasons expressed in this court's letter opinion of February 22, 1988, it is evident that the facts amended to the motion for judgment still do not establish that defendants "knew or should have known" that Mundy was likely to cause bodily harm to others if not controlled. Plaintiff's reference to the district court judge's comments from the bench, how Mundy was dressed in a bullet-proof

vest when he was arrested, statements allegedly made by Mundy to the arresting officer and the type of weapon concealed by Mundy -- all these facts, as troubling as they are -- do not establish that Winston or Troublefield knew or should have known these facts and that Mundy was, therefore, likely to cause harm to others if not controlled, an essential element required to plead and prove plaintiff's claim. Indeed, the motion for judgment pleads the aforementioned facts and circumstances but does not plead that either Winston or Troublefield knew or should have known about Mundy's weapon, his comments, or apparel or that either knew or should have known that the judge made certain comments about Mundy being a threat to the public.

Even if the court were to determine that the mere fact of Mundy's incarceration established a § 319 "special relationship" between defendants and Marvin Mundy, without more, the duty must, according to *Semler v. Psychiatric Institute of Washington, D.C.*, 538 F.2d 121 (4th Cir. 1976) be linked to some specific person or class of discernible victims. In *Semler*, liability against the psychiatric facility, a physician, and a Virginia probation officer was found because the court order mandating the felon's confinement and treatment created a duty of the facility, doctor, and probation officer to exercise reasonable care to protect that class of persons, *i.e.*, young girls who had previously been victims of the third party's crimes.

Likewise, in *A. L. v. Commonwealth*, 402 Mass. 234, 521 N.E.2d 1017 (1988), the probation conditions imposed by a sentencing judge, like the court order in *Semler*, created a special relationship between probation officers and school children injured when they were molested by a convicted child molester who had gained employment as a teacher at their school. (See the court's previous letter opinion on this point).

In other words, the fact that a § 319 custodial relationship is established is not enough. There must also be an allegation that some specific harm could be anticipated of some individual or class of individuals. Otherwise, application of §§ 315(a) and 319 would, in essence, abrogate the distinction between a public duty and a special duty.

Notwithstanding the fact that the court finds as a matter of law that no duty was owed to Mr. Marshall,

for the sake of a complete record, the court will address the remaining issues raised by defendants' demurrer.

The issue of foreseeability is closely related to the discussion of duty. If Mr. Marshall was one whom defendants could have foreseen would suffer harm as a result of Mundy's release, then Mundy's negligent release could, as a matter for a fact finder, be the legal and proximate cause of Mr. Marshall's murder. However, the court has already held that such duty cannot be imposed merely because a custodial relationship is established, but is contingent on the identification of an individual or class of individuals likely to be victimized by Mundy's release. The fact that Mr. Marshall was a night auditor at a motel and handled large sums of cash does not, as a matter of law, make his death at Mundy's hands a foreseeable result of the defendants' acts of prematurely releasing Mundy. In fact, Marshall's death some month or so later and under the facts alleged almost convince the court that as a matter of law, the release was not the proximate cause. As this issue need not be reached, further analysis is unnecessary.

*Section 1983*

For the reasons discussed above, plaintiff cannot establish that defendants owed plaintiff a duty, much less a duty of constitutional magnitude, which is required as a threshold factor in a § 1983 suit:

> The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order . . . .
>
> A state may, if it wants, recognize positive duties of care and make the breach of those duties tortuous. But the only duties of care that may be enforced in suits under § 1983 are duties founded on the Constitution or laws of the United States; and the duty to protect the public from dangerous madmen is not among them.

*Bowers v. DeVito*, 686 F.2d 616, 618-19 (7th Cir. 1982).

The appropriate test in determining whether Winston and Troublefield owed a *constitutional* duty to protect decent from the acts of Mundy is found in *Jensen v. Conrad*, 747 F.2d 185, 194 note 11 (4th Cir. 1984), *cert. denied*, 470 U.S. 1052 (1985). In order to find a duty, a "special relationship" must exist. To determine whether a "special relationship" exists, the court looks to whether the victim or perpetrator was in legal custody at the time of the incident, or had been in legal custody prior to the incident; whether the police expressed an intent to provide affirmative protection to specific individuals; and whether the police knew of the danger to the victim. In circumstances such as those presented here, where there are no allegations that Winston and Troublefield knew or should have known that Mundy posed a danger to the decedent, and where there are no allegations that the defendants had expressed any intent to warn or to affirmatively protect the decedent, the amended motion for judgment does not establish a special relationship and thereby a duty, for purposes of a § 1983 claim.

Additionally, even if plaintiff could surmount the Section 1983 obstacles of duty, she would still have to establish that Marvin Mundy, the perpetrator of the killing, was "acting under color of law." In this case, it is clear that the actor's conduct did not constitute the "state action" for purposes of asserting a § 1983 claim. In *Martinez v. California*, 444 U.S. 277 (1980), a parolee still in state custody murdered the plaintiff's daughter. Although the release of the parolee did constitute state action, the parolee's subsequent commission of a murder did not and, therefore, plaintiff's § 1983 claim failed.

Finally, plaintiff has failed to establish facts necessary to a finding of proximate cause. Marvin Mundy killed the decedent a full one month after his release. The Fourth Circuit, relying on *Martinez*, likewise found that a one-month interval between the release and the criminal act was "too remote" from the challenged conduct of the state actors to constitute a deprivation of constitutional rights under § 1983. *Fox v. Custis*, 712 F.2d 84, 87 (4th Cir. 1983). Accordingly, the court concludes as a matter of law that insufficient facts are pled and that defendants' wrongdoing was not, within the meaning of Section 1983, the proximate cause of decedent's death. Count

II of the amended motion for judgment must, therefore, be dismissed.

*Special Plea*

The court does not believe that any defense of immunity is appropriate in this case. Defendants cannot avail themselves of the cloak of sovereign immunity for failing to perform a simple, ministerial act of confining Mundy for the entire duration of his court-imposed sentence.

While devising a record system in accordance with a statutory mandate to confine may involve acts of discretion, the mandate to record and confine simply involves the Sheriff's or his deputies' obedience to the statute. No discretion is involved.

The court also rejects defendants' contentions that defendants enjoy quasi-judicial immunity. Neither defendant performed judicial functions in providing for the custody and release of Mundy. Mundy's sentence was fixed by the General District Court of Richmond at six months, and neither Winston nor his deputies were afforded the authority to substitute their own judgment for that of the court in determining how long Mundy should be confined. There was no question that Mundy was released on the basis of accumulated "good time" which may have given the Sheriff and his deputy immunity. Here it is alleged that the release was the result of a single act of negligence.

In light of the foregoing, defendants' motion to strike is rendered moot.