# CIRCUIT COURT OF THE CITY OF NORFOLK

Dorothy Berry

v.

Scott & Stringfellow
and Woody Walker

March 27, 1998

Case No. (Law) 97-3589

BY JUDGE JOHN C. MORRISON, JR.

The parties appeared before the Court on February 13, 1998, on defendants' demurrer to all counts of plaintiff's motion for judgment. Defendants, Scott & Stringfellow and Woody Walker, argue that plaintiff's claim of negligent retention (Count II) should be dismissed because it alleges a cause of action which does not exist in Virginia. Defendants also argue that plaintiff has failed to allege facts sufficient to support her claims of assault and battery (Count I) and negligent hiring (Count III). Finally, defendants contend that plaintiff is precluded from alleging $2.5 million in punitive damages (Count IV) because the Virginia Code sets a statutory cap at $350,000. Plaintiff, Dorothy Berry, maintains that she has alleged facts sufficient to establish claims of assault and battery, negligent retention, and negligent hiring, and that the statutory cap of $350,000 is only applied to the amount of damages recovered.

For the reasons stated in this opinion, the Court overrules defendants' demurrer to Counts I (assault and battery), II (negligent retention), and IV

(punitive damages), and sustains defendants' demurrer to Count III (negligent hiring), with leave granted to plaintiff to file an amended motion for judgment solely as to Count III.

## Facts

This action arises out of events which allegedly occurred while Woody Walker, operations manager at Scott & Stringfellow, was supervising the plaintiff. Plaintiff had been hired by Walker and, for approximately one month between August 12, 1997, and September 12, 1997, was employed by Scott & Stringfellow as a sales assistant. Plaintiff alleges that Walker harassed her from the beginning of her employment with Scott & Stringfellow and subjected her to rude and inappropriate comments with sexual connotations.

On or about August 12, 1997, Walker allegedly asked plaintiff whether she had ever sued anyone for sexual harassment. Walker indicated to plaintiff that women who sued for sexual harassment were usually fat and ugly. That same afternoon at approximately 5:30 p.m., plaintiff alleges that Walker escorted her to the parking garage, hugged her, kissed her cheek, and told her that she had great legs. The next day at the office, Walker allegedly leaned over plaintiff's shoulder, touched her and told her that she looked "good enough to eat."

Walker allegedly escorted plaintiff to her car again on or about August 18, 1997, thereafter indicating to her that she had "nice hooters." A few days later, on or about August 21, 1997, Walker allegedly peered down plaintiff's blouse as she was signing her time sheet and, simultaneously, shared with plaintiff a conversation in which he and the company's president, Furman Wall, discussed plaintiff's resemblance to a "china doll" and how plaintiff looked even better without any clothes on. Walker then whispered to plaintiff that he fantasized about her.

On or about August 22, 1997, plaintiff confronted Walker about his continued sexual harassment and demanded that such conduct immediately cease. Thereafter, on or about September 12, 1997, Walker allegedly met with plaintiff and told her, "This isn't good, I'm going to have to terminate you. You are too sweet for the job. It's overwhelming for you." Without other reason, Walker was terminated and discharged from her employment with Scott & Stringfellow.

Plaintiff alleges that, throughout her employment and without any invitation whatsoever, Walker regularly made unwanted physical contact with her and directed sexual remarks, innuendos, and terms of endearment toward

her. Such conduct on Walker's part occurred in the course of his responsibilities as a supervisor/manager at Scott & Stringfellow. Plaintiff claims that Walker conditioned her employment upon acquiescence to continued harassment or in exchange for sexual favors, and when Walker realized that she would not condone the harassment, she was wrongfully terminated.

Plaintiff alleges that Walker's propensity to sexually harass and assault female employees existed prior to her employment with Scott & Stringfellow. The facts indicate that Walker sexually harassed and assaulted a former female employee of Scott & Stringfellow. Walker's pattern of harassment was made known to Scott & Stringfellow especially after the Richmond office of Scott & Stringfellow investigated several complaints of Walker's harassment. Plaintiff contends that the investigation conclusively established a pattern or practice of inappropriate conduct and/or sexual harassment by Walker which continued throughout her employment with Scott & Stringfellow.

### Discussion

It is well established that a demurrer admits the truth of all properly pleaded material facts. Properly pleaded material facts, which are admitted, include facts expressly alleged, impliedly alleged, and fairly and justly inferred. *See CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993). A demurrer challenges the legal sufficiency of a pleading and tests whether, based on facts alleged and any reasonable inferences therefrom, the plaintiff has stated a cause of action upon which the court may grant relief. *See* Va. Code Ann. § 8.01-273; *Burns v. Board of Supervisors*, 218 Va. 625, 627 (1977).

A demurrer does not, however, admit the legal conclusions as stated in the motion for judgment. *See Chick v. MacBain*, 157 Va. 60, 65 (1931). If a motion for judgment contains sufficient allegations of material facts to inform a defendant of the claim asserted, the court must overrule the demurrer. *See CaterCorp*, 246 Va. at 24. A demurrer, unlike a motion for summary judgment, does not allow the court to evaluate the merits of a claim; it only tests the sufficiency of factual allegations to determine whether the motion for judgment states a cause of action. *See Fun v. Virginia Military Inst.*, 245 Va. 249, 252 (1992).

*Count I: Assault and Battery*

Defendant, Scott & Stringfellow, argues that it cannot be held vicariously liable for the acts of defendant Walker, because Walker's alleged sexual harassment of plaintiff arose from personal and independent motives which cannot be construed as furthering Scott & Stringfellow's business interest. The gravamen of defendant's argument is that plaintiff has not alleged facts sufficient to prove that Walker acted within the scope of his employment at the time of the alleged tortious conduct.

A plaintiff who seeks to recover damages from an employer for injuries caused by an employee must establish that the employer-employee relationship "existed at the time of the injuries." *Sayles v. Piccadilly Cafeterias, Inc.*, 242 Va. 328, 332 (1991) (citation omitted). In other words, the doctrine of respondeat superior will only apply when the relation of employer and employee is shown to exist between defendants, Scott & Stringfellow and Walker, "*at the time and in respect to the very transaction out of which the injury arose.*" *Id.* (emphasis added). Thus, if Scott & Stringfellow can prove that Walker was not acting within the scope of his employment, it may avoid vicarious liability.

The test of the liability of an employer for the tortious conduct of his employee, however, is *not* whether the tortious act itself was within the ordinary course of the employer's business, but whether the service in which the tortious act done was within the ordinary course of the employer's business. *See Commercial Business Systems, Inc. v. BellSouth, Inc.*, 249 Va. 39, 44 (1995). The Virginia Supreme Court held in *BellSouth* that the trial court erred in granting summary judgment on the issue of respondeat superior and opined that evidence of an employee's conduct which arose from purely personal motives was *not* sufficient to establish that the employee acted outside the scope of his employment.*See id.* at 43-44.

Excluding personal motives from the analysis is especially important in the context of sexual harassment. Otherwise, employers could uniformly shield themselves from vicarious liability in cases where an employee who, while acting within the scope of employment, creates an intolerable working environment riddled with sexual nuances.

The Court is unpersuaded by the argument that Walker was not acting within the scope of his employment. Plaintiff's allegations, when admitted as true, are sufficient to establish an agency relationship between defendants, Scott & Stringfellow and Walker. The Court concludes that the facts alleged in Count I, together with any reasonable inference therefrom, are sufficient to

state a cause of action of assault and battery. Accordingly, Scott & Stringfellow's demurrer to Count I is overruled.

## Count II: Negligent Retention

Defendant, Scott & Stringfellow, also argues that Virginia does not recognize the tort of negligent retention and, therefore, Count II of plaintiff's motion for judgment must be dismissed. In response, plaintiff cites to two cases in which the Virginia Supreme Court recognized claims for negligent retention of employees of charitable hospitals, *Norfolk Protestant Hospital v. Plunkett*, 162 Va. 151 (1934), and independent contractors, *Philip Morris, Inc. v. Emerson*, 235 Va. 380 (1988). Because the Virginia Supreme Court has never addressed the issue of negligent retention beyond the context of charitable hospitals and independent contractors, *Plunkett* and *Emerson* provide very limited support for plaintiff's position.

Virginia has long recognized a cause of action for negligent hiring of employees. *See J. v. Victory Tabernacle Baptist Church*, 236 Va. 206 (1988). The Virginia Supreme Court, however, has never interpreted the tort of negligent hiring to impose a duty on the employer beyond the initial hiring of an employee. *See Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 235 Va. 55 (1988).

The plaintiff in *Dowdy* suffered from a physical illness which caused severe diarrhea, constant stomach cramping, and nausea. Throughout his employment with the defendant telephone company, Mr. Dowdy's condition and job performance worsened. Absenteeism had become so problematic that after twelve and one-half years, the telephone company discharged him. Mr. Dowdy charged his immediate supervisors responsible for negligently and intentionally causing his condition to deteriorate and attributed liability to the telephone company for the negligent supervision resulting in aggravation of his physical and mental suffering. On this basis, Mr. Dowdy claimed he had " 'established that the defendants were on full notice that the stress and pressure that they were applying to the plaintiff were directly and adversely affecting his physical condition' and [therefore,] a jury should be permitted to conclude 'this to be unreasonable conduct on the part of the employer'." *Id.* at 60.

*Dowdy* was a case "in which an employee had difficulty coping or contending with the circumstances of his employment." *Id.* at 61. The Virginia Supreme Court refused to recognize an employer's general duty to supervise an employee absent an identifiable risk peculiar to the employment.

While the court in *Dowdy* found "no duty of reasonable care imposed upon an employer in the supervision of its employees *under these circumstances*," it did not opine that there would never be a situation in which an employer would have a duty to supervise an employee by taking steps to correct errant and improper actions reported to or otherwise known by an employer. *Cf. id.* at 61 (emphasis added); *Johnson-Kendrick v. Sears, Roebuck & Co.*, 39 Va. Cir. 314, 319 (1996).

The Fourth Circuit has interpreted *Dowdy* to impose no duty on an employer to prevent sexual harassment through supervision. *See Spencer v. General Elec. Co.*, 894 F.2d 651 (4th Cir. 1990). *Spencer* began as a Title VII sexual harassment case based on allegations of sexual assault. At trial, the court dismissed the negligent supervision claim after it determined that Ms. Spencer had failed to prove sexual assault by a preponderance of the evidence. *See Spencer v. General Elec. Co.*, 697 F. Supp. 204, 216-19 (E.D. Va. 1988). The Fourth Circuit considered Ms. Spencer's claim no different from that presented in *Dowdy*. "[Plaintiff's] claim is reduced to one based on [employer's] negligence in failing to prevent [employee] from intentionally harassing her by making unwanted sexual solicitations and by engaging in sexual horseplay." *Spencer*, 894 F.2d at 657. On this analogy, the Fourth Circuit affirmed the district court's dismissal.

Plaintiff in the instant case has made sufficient allegations of assault and battery. The court may not consider the merits of these allegations on a demurrer and, therefore, must withhold application of *Spencer* to the present action. If, at a later juncture, plaintiff fails to prove her allegations of assault and battery, the court may more appropriately consider *Spencer* as persuasive authority.

The federal courts in Virginia have relied on both *Dowdy* and *Spencer* to dismiss a negligent retention claim:

> The only difference between the negligent supervision action barred by *Dowdy* and *Spencer* and the negligent retention claim sought here is semantic. Virginia has recognized the tort of negligent hiring. *J. v. Victory Tabernacle Baptist Church*, 236 Va. 206, 372 S.E.2d 391, 393 (1988). An action for negligent hiring, however, does not bring with it one for negligent retention ... . Reference to the two salient cases cited [in *Victory Tabernacle*] reveal[s] that "hiring" and "retention" are used interchangeably and that they refer only to the initial decision to employ. Thus a cause exists only when an employer negligently fails to take note of a potential employee's propensity to later act tortiously.

Employer liability ... centers only upon the decision to hire; it goes no further once the employee is actually retained.

*Frye v. Virginia Transformer Corp.*, No. 95-0339-R, 1995 U.S. Dist. LEXIS 21250, at *3 (W.D. Va. Nov. 29, 1995); *see Dixon v. Denny's*, 957 F. Supp. 792 (E.D. Va. 1996) (adopting the reasoning in *Frye*). Clearly, the federal courts are reluctant to recognize a cause of action for negligent retention without express authority from either the Virginia General Assembly or the Virginia Supreme Court. *See Anderson v. Wiggins and Grant*, No. 97-0015-C, 1997 U.S. Dist. LEXIS 11898 (W.D. Va. July 15, 1997); *Dixon v. Denny's*, 957 F. Supp. 792 (E.D. Va. 1996); *Hott v. VDO Yazaki Corp.*, 922 F. Supp. 1114 (W.D. Va. 1996).

Notwithstanding the federal district courts' reluctance, the Fourth Circuit raised the viability of a negligent retention claim in Virginia. "Since Virginia recognizes the tort of negligent hiring, logic suggests that it would also recognize a cause of action based on an employer's negligent retention of an employee who displays dangerous tendencies after his hiring." *See Paroline v. Unisys Corp.*, 879 F.2d 100, 112 (4th Cir. 1989), *superseded en banc on other grounds*, 900 F.2d 27 (4th Cir. 1990). Unfortunately, the parties in *Paroline* had not raised the possibility of a negligent retention claim, and the Fourth Circuit left the issue unresolved.

In *Johnson-Kendrick v. Sears, Roebuck & Co.*, 39 Va. Cir. 314 (1996), this Court allowed a negligent retention claim to go forward when it limited the holding in *Dowdy* to the facts of that particular case and overruled a demurrer:

The court [in *Dowdy*] did not opine that there would never be a situation in which an employer would have a duty to supervise an employee. In fact, the court has reasoned in the context of negligent hiring that if an employer negligently hires an employee with known dangerous propensities, said employer would be liable for retaining that employee once he had actual or constructive knowledge of those propensities.

*Id.* at 319-20 (citing *Big Stone Gap Iron Co. v. Ketron*, 102 Va. 23, 27 (1903)). Clearly, the facts of *Johnson-Kendrick* differ from those presented in the instant case. However, such difference will not prevent the Court from allowing plaintiff's claim of negligent retention to proceed because, like those in *Johnson-Kendrick*, these facts present "a situation in which an employer would have a duty to supervise an employee."*Id.*

In paragraphs 24 through 35 of her motion for judgment, plaintiff alleges facts which, if admitted as true, sufficiently indicate that Scott & Stringfellow had actual notice of Walker's propensity to sexually harass and assault female employees. The allegations suggest that even prior to plaintiff's employment with Scott & Stringfellow, there existed a pattern of inappropriate conduct and sexual harassment by Walker. In fact, the Richmond office of Scott & Stringfellow conducted investigations of Walker after receiving complaints of his alleged sexual harassment. These investigations allegedly established Walker's propensity to sexually harass and assault female employees/broker assistants working at Scott & Stringfellow. It strains this Court's logic to suggest that the Richmond office would not have communicated its findings to the Norfolk office of Scott & Stringfellow.

This Court is in agreement with the Fourth Circuit that "logic suggests that [Virginia] would also recognize a cause of action based on an employer's negligent retention of an employee who displays dangerous tendencies *after* his hiring," if Virginia recognizes a cause of action based on a employer's negligent hiring of an employee who displays dangerous tendencies *before* his hiring. *Paroline v. Unisys Corp.*, 879 F.2d 100,112 (4th Cir. 1989) (emphasis added), *superseded en banc on other grounds*, 900 F.2d 27 (4th Cir. 1990). The Court further agrees that an action for negligent hiring does not bring with it one for negligent retention. What separates one cause of action from the other concerns the issue of when an employer actually or constructively learns of the employee's dangerous propensities. If an employer negligently fails to take note of a *potential* employee's propensity to later act tortiously, the analysis centers only upon the decision to hire. If an employer, after actual or constructive knowledge of an existing employee's propensity to act tortiously, negligently fails to take note of such propensity and to alleviate the negative impact on the workplace, the analysis centers only upon the decision to retain.

Insofar as plaintiff, in the case at bar, has alleged in her motion for judgment that at the time of the tortious conduct, Scott & Stringfellow had either actual or constructive knowledge of Walker's propensity to sexually harass and assault female employees, plaintiff has arguably alleged facts sufficient to support a negligent retention claim. Defendant's demurrer to Count II is overruled.

### Count III: Negligent Hiring

Next, Scott & Stringfellow argues that plaintiff's allegations are insufficient to support her claim of negligent hiring and therefore, Count III of plaintiff's motion for judgment should be dismissed.

As the court has previously discussed, Virginia does recognize a cause of action for negligent hiring of employees. *See J. v. Victory Tabernacle Baptist Church*, 236 Va. 206 (1988). "[N]egligent hiring is a doctrine of primary liability." *Id.* at 211. "The test is whether the employer has negligently placed an unfit person in an employment situation involving an unreasonable risk of harm to others." *Simmons v. Baltimore Orioles, Inc.*, 712 F. Supp. 79, 81 (W.D. Va. 1989) (quoting *Victory Tabernacle*, 236 Va. at 211).

Plaintiff must specifically allege acts of Walker, prior to his employment with Scott & Stringfellow, that would have suggested to Scott & Stringfellow that Walker had the propensity to sexually harass and assault female employees and was, therefore, unfit for the job. The Court finds that plaintiff's conclusory assertions of liability are insufficient to overcome defendants' demurrer. Accordingly, the court sustains defendant's demurrer to Count III and grants plaintiff leave to amend Count III of her motion for judgment to allege the necessary and material facts which make out a cognizable claim of negligent hiring.

## Punitive Damages

Finally, defendants argue that the statutory cap of $350,000 set forth in Virginia Code § 8.01-38.1 precludes plaintiff from alleging $2.5 million in punitive damages. The statutory cap, however, limits the amount which may be recovered, not the amount of punitive damages which may be asserted and proven by the plaintiff. *See Etheridge v. Medical Center Hospitals*, 237 Va. 87 (1989) (noting that the medical malpractice damages cap applies only after the jury has fulfilled its fact finding function). As such, defendants' argument is premature.

Accordingly, defendants' demurrer to the punitive damages claim is overruled. In making this ruling, the Court withheld consideration of the merits of the case to determine whether plaintiff's allegation of punitive damages is supported by the law. Such consideration is more appropriate on a motion for summary judgment.