**Debra L. DIXON, Plaintiff,**

v.

**DENNY'S INC., Defendant.**

**No. 2:95cv901.**

United States District Court, E.D. Virginia, Norfolk Division.

July 29, 1996.

---

Lisa Palmer O'Donnell, Shuttleworth, Ruloff & Giordano, Virginia Beach, VA, for plaintiff.

Abram William VanderMeer, Jr., Clark & Stant, P.C., Virginia Beach, VA, Timothy Walker Dorsey, Clark & Stant, P.C., Virginia Beach, VA, for defendant.

## OPINION AND ORDER

MacKENZIE, District Judge.

This matter is before the Court for the resolution of the Defendant's motion for partial summary judgment. Because the Court believes that counts two, three and four of the complaint fail to state a claim under Virginia law, the motion is **GRANTED.**

### I.

The facts of this dispute are fairly simple and, when viewed in the light most favorable to the non-moving party, can be summarized as follows. Debra Dixon ("Dixon" or "the Plaintiff") was employed by Denny's, Inc. ("Denny's") as a waitress at its Virginia Beach location from December 13, 1993 until she resigned on September 28, 1994. Marvin Pierce ("Pierce") was employed by the Virginia Beach Denny's as a bus boy during that time frame. On numerous occasions during Dixon's tenure at Denny's, Pierce made unwanted physical contact with her and directed sexual remarks, innuendoes, and terms of endearment toward her and other female employees. On one occasion, when Pierce encountered Dixon in the storage room of the restaurant, he even threatened to rape her. At some point during her employment at Denny's, Dixon learned that Pierce had told other employees that he was in Virginia Beach because he raped a woman in Richmond. Dixon and at least one other employee complained about Pierce's behavior to both their supervisor and the manager of the restaurant. Nonetheless, management failed to remedy the situation, and Dixon resigned on September 28, 1994.

On September 7, 1995, Dixon filed a four-count complaint against Denny's and Pierce, alleging that Pierce's behavior created a hostile work environment which forced her to resign. Specifically, the complaint alleges the following causes of action: 1) a federal claim for sexual harassment and hostile work environment, in violation of Title VII (COUNT ONE); 2) a pendent claim for intentional infliction of emotional distress (COUNT TWO); 3) a pendent claim for negligent retention of an employee (COUNT THREE); and 4) a pendent claim for constructive discharge (COUNT FOUR). The complaint seeks: 1) a permanent injunction to prevent Denny's from engaging in any employment practice which creates a hostile work environment; 2) back-pay plus interest; 3) front-pay; 4) compensatory damages of $350,000; 5) punitive damages of $350,000; and 6) reasonable attorney's fees and costs.

On February 22, 1996, Dixon dismissed Pierce from the lawsuit without prejudice because she could not locate him for service of process. On July 2, 1996, Denny's filed the present motion for partial summary judgment, claiming that counts two, three and four fail to state a claim under Virginia law.

### II.

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exists no genuine issue of material fact such that the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990) (en banc), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). Issues of material fact are genuine only "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The facts, and inferences to be drawn from the facts, must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Moore v. Winebrenner,* 927 F.2d 1312, 1313 (4th Cir.), *cert. denied,* 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991). To defeat summary judgment, a non-moving party, who will bear the burden of proof at trial on a dispositive issue, must go beyond his or her pleadings with affidavits, depositions, interrogatories, or other admissible evidence to show specific facts that amount to a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1985).

### III.

The Court will address Denny's motion for summary judgment as to counts two, three and four *seriatim.*

### A.

With respect to count two, the pendent claim for intentional infliction of emotional distress, Denny's argues that it cannot be held vicariously liable for Pierce's alleged conduct because it was not within the scope of Pierce's employment. Denny's also argues that Dixon has failed to allege facts which demonstrate that Denny's acts were either intentional or outrageous or that Dixon suffered severe emotional distress, as required under Virginia's common law tort of intentional infliction of emotional distress.

Dixon answers that Pierce's alleged tortious acts were within the scope of his employment because he committed them while performing his duties as a busboy at Denny's. She also claims that Denny's failure to address complaints about Pierce's behavior demonstrates that Denny's can be held primarily liable for intending to cause severe emotional distress to Dixon, that Pierce's conduct was outrageous because he threatened to rape Dixon, and that Dixon did in fact suffer severe emotional distress under Virginia law because she was fearful of Pierce, she felt that Pierce's behavior had degraded her, and because she suffered headaches and an upset stomach. *See* Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 3; Memo-

randum in Support of Defendant's Motion for Summary Judgment at 10–11.

■ Under Virginia's interpretation of the doctrine of *respondeat superior,* in order to hold an employer liable for the acts of one of its employees, a plaintiff must establish: 1) that the tortfeasor was an agent of the employer; and 2) that the tortfeasor was acting within the scope of his employment at the time of the tortious act. *See, e.g., Sayles v. Piccadilly Cafeterias, Inc.,* 242 Va. 328, 410 S.E.2d 632, 634 (1991). Furthermore, an act is deemed to be within the scope of employment if: 1) it is something fairly and naturally incident to the business; and 2) it is done while the servant was engaged upon the master's business and is done, although mistakenly or ill-advisedly, with a view to further the master's interest, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business. *See id.; Jamison v. United States,* 794 F.Supp. 587, 589 (W.D.Va. 1992), *rev'd on other grounds,* 14 F.3d 222 (4th Cir.1994).

■ The Court concludes that Pierce's acts were not within the scope of his employment. Pierce's harassment of Dixon cannot reasonably be construed to have been something fairly and naturally incident to his duties as a bus boy for Denny's. Moreover, Pierce's behavior toward Dixon cannot reasonably be viewed to have been done with a view to further Denny's interests, nor can it be viewed to have been done out of an impulse or emotion which naturally grew out of or was incident to his duties as a bus boy. Therefore, Pierce was not acting within the scope of his employment when he committed the allegedly tortious acts, and Denny's cannot be held vicariously liable for Pierce's conduct.

■ This conclusion does not end the present inquiry, however, for the Court must also determine whether Denny's can be primarily liable for intentional infliction of emotional distress because of its alleged failure to put an end to Pierce's tortious conduct despite receiving notice of it from Dixon and her fellow employees.

To establish an intentional infliction of emotional distress claim under Virginia law, a plaintiff must allege facts which demonstrate: 1) intentional or reckless conduct by the defendant; 2) of an outrageous and intolerable nature; 3) which caused; 4) severe emotional distress to the plaintiff. *See Womack v. Eldridge,* 215 Va. 338, 210 S.E.2d 145, 148 (1974). Because injury to the mind or emotions can be easily feigned, intentional infliction of emotional distress is "not favored" under the law of Virginia. *See Ruth v. Fletcher,* 237 Va. 366, 377 S.E.2d 412, 415 (1989). The first element is satisfied where the defendant had the specific purpose of inflicting emotional distress or where the specific conduct was intended and the actor knew or should have known that emotional distress would likely result. *See Womack,* 210 S.E.2d at 148. The second element is satisfied if the conduct "offends against the generally accepted standards of decency and morality [and] is aimed at limiting frivolous suits and avoiding litigation where only bad manners and mere hurt feelings are involved." *Id.* The third element requires a causal connection between the defendant's conduct and the emotional distress. *See id.*

*Russo v. White,* 241 Va. 23, 400 S.E.2d 160 (1990), is instructive with respect to the fourth element of the present claim. In that case, a single parent sued an acquaintance with whom she had been on one date, alleging that he made over 340 "hang-up" phone calls to her residence over nine (9) months. *See id.* 400 S.E.2d at 161. She alleged severe emotional distress in the form of nervousness, sleeplessness, stress and its physical symptoms, withdrawal and lack of concentration. *See id.* at 161–62. The Virginia Supreme Court sustained the demurrer. *See id.* at 163. The Court concluded that the lack of any verifiable evidence of severe emotional distress precluded the plaintiff's suit: "There is no claim, for example, that she had any objective physical injury caused by the stress, that she sought medical attention, that she was confined at home or in the hospital, or that she lost income. Consequently, we conclude that the alleged effect on the plaintiff's sensitivities is not the type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it." *Id.*

The Court concludes that Dixon has failed to allege facts which are sufficient to satisfy the fourth element of her claim for intentional infliction of emotional distress under Virginia law. Dixon has alleged that Pierce's actions made her fearful and degraded, and that she suffered headaches and vomiting as a result of his behavior. Yet, "even on demurrer, the court is not bound by such conclusory allegations when the issue involves, as here, a mixed question of law and fact." *Id.* Dixon has offered no objectively verifiable evidence—such as medical bills or even the testimony of friends or family—which corroborates her allegations of severe emotional distress. Her claim for lost wages begs the question, because the extent of that loss stemmed from her resignation, which resignation is not actionable unless caused by her severe emotional distress. In light of this lack of evidence, the Court HOLDS that Dixon has failed to allege facts sufficient to support a claim for emotional distress which is so severe that no reasonable person could be expected to endure it.

Accordingly, the Court **GRANTS** Denny's motion for summary judgment as to count two of the complaint.

### B.

With respect to count three, the pendent negligent retention claim, Denny's contends that "negligent retention" is not a recognized cause of action under Virginia law. Denny's argues that while Virginia has recognized a cause of action for the "negligent selection and retention" of an employee, that cause of action has been interpreted to impose a duty on the employer only with respect to the hiring of employees, and not with respect to supervising employees or firing them under certain circumstances.

In her response, Dixon cites a recent case from the Norfolk Circuit Court in which a defendant's demurrer to a negligent retention claim in a sexual harassment case was overruled. Dixon also argues that since Virginia has recognized a cause of action for "negligent selection and retention," the word retention should be given its ordinary mean-

ing, which would extend the employer's duty beyond the initial hiring of an employee.

Although Virginia has long-recognized a cause of action for negligent hiring of employees, *see, e.g., Hott v. VDO Yazaki Corp.,* 922 F.Supp. 1114, 1129 (W.D.Va.1996) (citing *J. v. Victory Tabernacle Baptist Church,* 236 Va. 206, 372 S.E.2d 391, 393 (1988)), there appears to be a split of authority concerning the legitimacy of the tort of negligent retention under Virginia law. The Virginia Supreme Court has never interpreted the tort of negligent hiring to impose a duty on the employer beyond the initial hiring of an employee. For instance, in *Chesapeake and Potomac Telephone Co. of Virginia v. Dowdy,* 235 Va. 55, 365 S.E.2d 751 (1988), the Virginia Supreme Court held that Virginia imposes no duty of reasonable care on an employer for the supervision of its employees. *See id.* 365 S.E.2d at 752–54. Moreover, *Dowdy* has been interpreted by the Fourth Circuit to impose no duty on an employer to prevent sexual harassment. *See Spencer v. Gen'l Elec. Co.,* 894 F.2d 651, 657 (4th Cir.1990). Nevertheless, courts have reached disparate conclusions regarding the viability of a negligent retention claim under Virginia law. On the one hand, Virginia's recognition of a negligent hiring cause of action has led the Fourth Circuit to state: "Since Virginia recognizes the tort of negligent hiring, logic suggests that it would also recognize a cause of action based on an employer's negligent retention of an employee who displays dangerous tendencies after his hiring." *Paroline v. Unisys Corp.,* 879 F.2d 100, 112, *vacated sub nom.,* 900 F.2d 27 (4th Cir.1989). Similarly, in a recent case, a Norfolk Circuit Court became the first court in Virginia to allow a negligent retention theory to go forward, *see* Paul Fletcher, *Negligent Retention Claim OK,* Virginia Lawyers Weekly, June 10, 1996, at *1, when it limited the holding in *Dowdy* to the facts of that case and overruled a demurrer: "The court [in *Dowdy* ] did not opine that there would never be a situation in which an employer would have a duty to supervise an employee." *Johnson–Kendrick v. Sears Roebuck & Co.,* VLW 096–8–234 (Va.Cir. June 1996). On the other hand, at least two federal courts in Virginia have declined to recognize the tort

of negligent retention despite the Fourth Circuit's dictum in *Paroline.* A federal court in the Western District of Virginia relied on the reasoning in *Dowdy* and *Spencer* to dismiss a negligent retention claim:

> The only difference between the negligent supervision action barred by *Dowdy* and *Spencer* and the negligent retention claim sought here is semantic. Virginia has recognized the tort of negligent hiring. *J. v. Victory Tabernacle Baptist Church,* [236 Va. 206], 372 S.E.2d 391, 393 (Va.1988). An action for negligent hiring, however, does not bring with it one for negligent retention.... Reference to the two salient cases cited [in *Victory Tabernacle* ] reveal[s] [sic] that "hiring" and "retention" are used interchangeably and that they refer only to the initial decision to employ.... Employer liability ... centers only upon the decision to hire; it goes no farther once the employee is actually retained.

*Frye v. Virginia Transformer Corp.,* No. Civ.A. 95–0399–R, 1995 WL 810018 at *3 (W.D.Va. Nov. 29, 1995). In addition, in a case which is similar to the present dispute, a different federal court in the Western District of Virginia found *Paroline* 's dictum inapposite and concluded: "Given the lack of direction from the Virginia legislature and courts, the court believes that the plaintiff's claim based upon negligent retention must fail." *Hott,* 922 F.Supp. at 1130; *see also Bowerman v. Industrial Towel Supply, Inc.,* No. Civ.A. 94–00088–H, 1996 WL 173139, at *10 (W.D.Va. Apr. 10, 1996) (relying on *Hott* to hold that a negligent retention count fails to state a claim in Virginia).

■ The Court concludes that a claim for negligent retention is not actionable under Virginia law. The Virginia Supreme Court has refused to impose on employers a duty which would extend beyond the initial decision to hire. *See Dowdy,* 365 S.E.2d at 752–54. In addition, of the four courts which have actually decided the viability of a negligent retention claim in Virginia, three have concluded that no such tort exists under Virginia law. *See Hott,* 922 F.Supp. at 1130; *Bowerman,* 1996 WL 173139, at *10; *Frye,* 1995 WL 810018, at *3; *but see Johnson–*

*Kendrick,* VLW 096–8–234. Given this weight of authority and the absence of guidance on the subject from either the Virginia Supreme Court or the state legislature, this Court is reluctant to expand Virginia law by recognizing a relatively novel cause of action such as negligent retention. Accordingly, the Court **GRANTS** Denny's motion for summary judgment as to count three of the complaint.

### C.

With respect to count four, the pendent constructive discharge claim, Denny's maintains that Virginia recognizes the common law doctrine of employment at will, with only a narrow exception for discharges that violate public policy expressed by statute, and has not yet recognized a cause of action for constructive discharge. Denny's also argues that Virginia's public policy exception to the employment at will doctrine does not include claims for sexual harassment, as opposed to sexual discrimination.

Dixon argues in response that the public policy exception to the employment at will doctrine applies to a scenario in which the employee is constructively discharged because of a hostile work environment.

Although Virginia has strongly adhered to the employment at-will doctrine, it has recognized an exception to that doctrine where an employer uses the threat of discharge of an at-will employee in violation of the public policy of the Commonwealth. *See Bowman v. State Bank of Keysville,* 229 Va. 534, 331 S.E.2d 797, 801 (1985). In addition, the Virginia Supreme Court recently held that the public policy exception to the employment at-will doctrine includes termination because of discrimination based upon race or gender: "We do not retreat from our strong adherence to the employment at-will doctrine. We merely hold that the narrow exception to that doctrine, which we recognized in *Bowman,* includes instances where ... employees are terminated because of discrimination based upon gender or race." *See Lockhart v. Commonwealth Educ. Sys. Corp.,* 247 Va. 98, 439 S.E.2d 328, 331–32 (1994); *see also Nguyen v. CNA Corp.,* 44 F.3d 234, 238 n. 1 (4th Cir.1995).

Virginia courts appear to be split on the issue of whether the public policy exception to the at-will employment doctrine extends to *constructive* discharge cases as well as *actual* discharge cases. A Virginia Circuit Court for the City of Roanoke recently overruled a demurrer in a sexual harassment constructive discharge case, concluding: "If the Plaintiff can prove what she has alleged, it is the clear and unequivocal public policy of this Commonwealth that no person should have to suffer such indignities nor be subjected to such rude and reprehensible conduct in the employment place." *Dowdy v. Bower,* No. CL95–534, slip op. at 6 (Cir.Ct. Roanoke Dec. 19, 1995); *see also Lundy v. Cole Vision Corp.,* VLW 096–8–226 (Va.Cir.1996) ("[W]hile *Lockhart* dealt with an alleged instance of actual discharge, its teaching is clear: discrimination in the workplace leading to separation is verboten.... A case of constructive [discharge] is just as egregious as actual termination when they both come about by impermissible discrimination."). Two federal courts applying Virginia law recently reached a conclusion consistent with *Bower* and *Lundy.* *See Ecklund v. Fuisz Technology, Ltd.,* 905 F.Supp. 335, 339–41 (E.D.Va.1995) (Brinkema, J.) (denying a motion to dismiss a pendent claim for constructive discharge based on sexual harassment); *Hensler v. O'Sullivan Corp.,* VLW 095–3–290 (W.D.Va.1995) (Crigler, Mag. J.) (same); Christine Wright, *Constructive Discharge Supports Bowman Suit,* Virginia Lawyers Weekly, Nov. 20, 1995, at *1. In contrast, a Virginia Circuit Court for the City of Virginia Beach recently concluded: "Even if the Plaintiff could present facts which establish a case of constructive discharge, no Virginia court has extended the tort of wrongful discharge in violation of public policy to include such a scenario." *Jones v. Professional Hospitality Resources, Inc.,* 35 Va.Cir. 458, 460 (1995). In addition, at least two federal courts have reached conclusions which are consistent with *Jones.* *See Hairston v. Multi-Channel TV Cable Co.,* No. 95–2363, 1996 WL 119916, at *3 (4th Cir. March 19, 1996) (holding that a district court correctly dismissed a constructive discharge claim under Virginia law because that cause of action had not been recognized by Virginia's courts).

The Court concludes as a matter of law that a claim for constructive discharge does not yet exist under Virginia law. The Court can certainly appreciate both sides of the conflict concerning the viability of a constructive discharge claim under Virginia law. On the one hand, extending the public policy exception to the employment at-will doctrine to include constructive discharge cases could be viewed to be consistent with the reasoning in *Bowman* and *Lockhart*. *Bowman* made it illegal for an employer to bring pressure to bear on the vulnerable employee relationship in an effort to subvert rights conferred on the employee by established public policy. *Bowman*, 331 S.E.2d at 800. *Lockhart* unequivocally established that racial and sexual discrimination are contrary to the public policy of Virginia: "Without question, it is the public policy of this Commonwealth that all individuals within this Commonwealth are entitled to pursue employment free of discrimination based on race or gender." *Lockhart*, 439 S.E.2d at 331. Denying an employee the opportunity to sue an employer which has brought pressure to bear on the vulnerable employee relationship through race or gender harassment arguably subverts the employee's established right to pursue employment free from race and gender discrimination. On the other hand, however, the Commonwealth is certainly entitled to refuse to recognize constructive discharge as a cause of action, thereby requiring plaintiffs in such cases to avail themselves of federal procedures and remedies under Title VII. The debate implicates basic notions of federalism, presenting the question of whether a federal court should decide an issue of state law about which there is an ongoing debate between state courts. In a case involving the viability of a constructive discharge claim under Virginia law, the Fourth Circuit recently admonished that "federal courts should use caution in extending state law to a point beyond which a state's highest court has not taken it." *Hairston*, 1996 WL 119916 at *3 (citing *Spencer*, 894 F.2d at 657). This Court must, of course, abide by the Fourth Circuit's mandate in *Hairston*. Therefore, the Court CONCLUDES that a federal court should not interpret Virginia's public policy exception to the employment at will doctrine to encompass constructive as well as actual discharge unless and until Virginia's courts have unequivocally done so. Accordingly, the Court **GRANTS** Denny's motion for summary judgment as to count four.

Because the Court concludes that constructive discharge is not actionable under Virginia law, it will not address Denny's argument that the *Bowman* exception to the employment at will doctrine encompasses only sexual discrimination and not sexual harassment.

## IV.

The Court **GRANTS** summary judgment as to count two of the complaint because Pierce was not acting within the scope of his employment during the allegedly tortious acts, or in the alternative, because Dixon has failed to allege facts which sufficiently demonstrate severe emotional distress. The Court also **GRANTS** summary judgment as to count three of the complaint because the tort of negligent retention is not actionable under Virginia law. Lastly, the Court **GRANTS** summary judgment as to count four of the complaint because it concludes that the public policy exception to Virginia's employment at will doctrine does not yet encompass constructive discharges as well as actual discharges.

IT IS SO **ORDERED.**