**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GRADY PERRY, on his behalf and on
behalf of others similarly situated;
PAMELA PERRY, on her own behalf
and on behalf of others similarly
situated,
Plaintiffs-Appellants,

v.

CITY OF NORFOLK; JAMES B. OLIVER,
JR., City Manager of the City of
Norfolk, in his official and
individual capacity; GEORGE G.
MUSGROVE, individually; SUZANNE
PURYEAR, individually; KEVIN
CHILDS, individually; BRENDA
HERRON, individually,
Defendants-Appellees,                                    No. 98-2284

and

CLARENCE H. CARTER,
Commissioner, Virginia Department
of Social Services, in his official
and individual capacity; CORLISS V.
BOOKER; BRIAN E. CAMPBELL; PHILLIP
W. JONES; FRANKLIN R. JOSEPH;
HOLLY D. KORTE; FRANK MEDICO;
SHIRLEY C. ROGERS; RITA THOMPSON;
ROBERT C. SPADACCINI, SR.,
individually and in their official
capacities as members of the State
Board of Department of Social
Services,
Defendants.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Jerome B. Friedman, District Judge.
(CA-97-893-2)

Argued: June 10, 1999

Decided: September 20, 1999

Before LUTTIG and KING, Circuit Judges, and BUTZNER, Senior
Circuit Judge.

_____

Affirmed by unpublished opinion. Judge King wrote the opinion, in
which Judge Luttig and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Bernard Travis Holmes, HOLMES & ASSOCIATES,
P.C., Virginia Beach, Virginia, for Appellants. John Yulee Richard-
son, Jr., Deputy City Attorney, Norfolk, Virginia, for Appellees. **ON
BRIEF:** Jacob P. Stroman, IV, Deputy City Attorney, Norfolk, Vir-
ginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

KING, Circuit Judge:

Grady Perry ("Perry") and his wife, Pamela Perry ("Ms. Perry"),
sued the City of Norfolk, Virginia, and numerous individual defen-

dants after Perry was listed in Virginia's Child Abuse and Neglect Information System ("CANIS") registry and lost his job as a result. Perry brought several state-law tort claims, along with claims under 42 U.S.C. § 1983, protesting the fact that he had been listed in CANIS, as well as the procedures followed by the City of Norfolk Child Protective Services Unit ("Norfolk CPS") in deciding to list him. Ms. Perry joined as a plaintiff to contest the constitutionality of Virginia's Child Abuse and Neglect Act ("CANA"), Va. Code Ann. § 63.1-248.1 to -248.18, contending that the CANA infringed her constitutionally protected right to discipline her children. In addition, each of the Perrys sought to represent a class of similarly situated individuals.

The district court for the Eastern District of Virginia determined that Ms. Perry lacked standing, and therefore dismissed her from the suit and refused to certify her proposed class. It further dismissed certain of Perry's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and it granted summary judgment in favor of the remaining defendants as to the balance of Perry's claims. The court also refused to certify the class that Perry sought to represent.

The Perrys appeal the district court's rejection of their various claims, as well as its refusal to certify their respective classes. Finding no error in the district court's treatment of these claims, we affirm.

I.

On March 9, 1990, Kevin Childs, a social worker with the Norfolk CPS, received a complaint that five-year-old Marcus Staton had been beaten by his father, Grady Perry. When Childs visited Marcus at school, he saw that the child had lacerations on his forehead, which Marcus said had been caused by his father hitting him with a belt buckle. Childs then spoke with Perry, who admitted to having used a belt to spank Marcus. He also admitted that he had hit Marcus in the head with the belt, although he claimed that this blow had been accidental. According to Perry, Childs said that he had found no evidence of abuse and was closing Perry's file.

But Childs did conclude that Perry had abused Marcus, and his supervisor concurred. Childs then drafted a report to this effect. How-

ever, he later destroyed his handwritten notes and some photographs that he had taken of Marcus, allegedly because he was told that the photographs were insufficient for evidentiary purposes. Childs thereafter assembled information necessary to list Perry in the CANIS registry.

Childs also prepared a letter notifying Perry of his right to a hearing at which he could contest his designation as a child abuser. Apparently, Perry's first and last names were transposed on the letter, and the letter was misaddressed. Nothing in the record indicates that these inaccuracies were intentional. The letter was mailed but it appears that Perry never received it.

Some time in 1991, management of the Norfolk CPS became concerned with the quality of some of its social workers' research. Consequently, it directed a CPS supervisor, Karen Hatch, to audit the CPS's files. Hatch found many of the files to be in poor shape and not in compliance with the Norfolk CPS's requirements. Some of the deficient files belonged to Childs. In fact, Childs's file regarding Perry was found to be deficient, and Hatch recommended that Childs be reprimanded.[1]

In 1995, Perry was fired from his job as a custodian with Virginia Beach Public Schools, because the school found out that he was listed as a child abuser on CANIS and because Perry had not indicated on

_____

[1] Perry contends that, as part of Hatch's 1991 audit of his file, she became aware that Childs's letter to Perry had been misaddressed. Perry bases this claim on a strained interpretation of Hatch's deposition testimony given in a related state-court proceeding. The district court chose not to consider this deposition, as the City of Norfolk's attorneys were not present when it was given. Instead, the district court considered only Hatch's deposition testimony given in this case, in which she unequivocally states that she learned only in 1995 that Perry's notification letter was misaddressed. J.A. 221.

When the relevant parts of either of these depositions are read in full, though, neither supports Perry's proffered interpretation, even giving him the benefit of all inferences due. As a result, Perry has not raised a genuine issue of fact as to when Hatch learned that the letter had not been sent.

4

his employment application that he had been found to be a child abuser. This was the first time Perry learned he was listed in the CANIS registry. He then requested and was given a hearing before Hatch. She confirmed the finding of child abuse, and her finding was upheld on administrative review, but was ultimately overturned on appeal to the Norfolk Circuit Court.[2]

The Perrys then filed this suit against the City of Norfolk Department of Human Services (DHS); James Oliver, Norfolk's City Manager; George Musgrove, the former head of the DHS; Suzanne Puryear, the current DHS director; Kevin Childs; and Brenda Herron, Childs's immediate supervisor.[3] As to all defendants, Perry brought claims under § 1983, alleging violations of substantive and procedural due process. He sued Puryear, Musgrove, Herron, and Childs for intentional infliction of emotional distress under Virginia law. Additionally, Perry sued Oliver for state-law negligent hiring and retention of Musgrove, contending that Musgrove had been fired from a prior job for incompetence. Ms. Perry joined as a plaintiff, alleging that her federal constitutional rights to discipline her children were being chilled by the CANA. Finally, the Perrys sought certification of two classes consisting of:

> (1) all Virginia residents who are parents or guardians and were finally determined to be child abusers, without their knowledge; and whose names were entered into the CANIS central registry as child abusers, without their knowledge; (2) all parents or guardians who were found to be child

_____

[2] The Norfolk Circuit Court ordered the designation of Perry's child abuse determination changed to "unfounded," but it concluded that the Norfolk CPS had not violated any statutory or constitutional authority.
[3] The Perrys also named as defendants the Commissioner of the Virginia Department of Social Services, as well as members of the Virginia Board of the Department of Social Services. Each of these defendants was sued in his individual and official capacities. Because the Perrys were able to address their claims against these defendants in a then-pending state case, the district court stayed all claims against these defendants and abstained from further rulings on those issues, in accordance with Younger v. Harris, 401 U.S. 37 (1971). As a result, none of these defendants is a party to this appeal.

abusers based <u>solely</u> on the agency defendants' finding that a "mark/bruise" left on a child during a lawful disciplinary spanking constituted child abuse, notwithstanding the lack of intent of the parent or other person to injure the child.

The district court issued two dispositive orders. Its first order, entered on January 29, 1998, did the following: (1) dismissed Ms. Perry as a plaintiff for lack of standing, both as an individual and as a putative class representative; (2) dismissed Perry's claim for intentional infliction of emotional distress under Rule 12(b)(6) for failure to state a claim; (3) found the City of Norfolk immune from certain claims; (4) dismissed Perry's claim for negligent retention, also under Rule 12(b)(6); and (5) refused to certify the proposed classes. On July 27, 1998, the district court granted summary judgment in favor of the defendants as to all remaining claims.

The Perrys appeal the district court's orders (1) dismissing Ms. Perry as a plaintiff for lack of standing; (2) dismissing under Rule 12(b)(6) Perry's claim for intentional infliction of emotional distress; (3) granting summary judgment in favor of Oliver as to Perry's negligent hiring claim; (4) granting summary judgment in favor of all defendants as to Perry's substantive and procedural due process claims under § 1983; and (5) refusing to certify the proposed classes. We affirm the district court's orders as to each of these issues.

II.

Ms. Perry appeals the district court's order determining that she lacked standing to challenge the constitutionality of the CANA, either individually or as a class representative. Specifically, the court held that Ms. Perry had suffered no present injury that could support a "case or controversy," because she could not allege that she was in danger of having the CANA enforced against her. We agree.

Without pointing to any specific provision of the CANA, Ms. Perry argues that the statute and its implementing regulations establish a per se rule that any disciplinary spanking resulting in a mark or bruise on a child constitutes child abuse. She challenges the district court's ruling that she lacks standing, arguing that because she likely will have to discipline her children in the future, and because she will encounter

6

the alleged "mark or bruise" restrictions of the CANA on such future occasions, the CANA will chill her constitutionally protected right to discipline her children.

We agree with the district court that Ms. Perry's claim is not justiciable, although for reasons somewhat different from those the district court gave.**4** Rather than analyzing this claim in terms of standing, it is easier to understand the defect in Ms. Perry's claim as a lack of ripeness. The Supreme Court has held that a plaintiff who, like Ms. Perry, alleges only that she intends to violate a law and fears that she will have the law enforced against her if she does violate it, does not present a sufficiently ripe controversy for adjudication. United Pub. Workers v. Mitchell, 330 U.S. 75 (1947).

Here, Ms. Perry alleges only that she may wish to spank her children in the future, not that she has done so and fears imminent enforcement of the CANA. Any threat of enforcement against Ms. Perry is, therefore, purely hypothetical and is beyond our power to address:

> It would not accord with judicial responsibility to adjudge, in a matter involving constitutionality, between the freedom of the individual and the requirement of public order except when definite rights appear upon the one side and definite prejudicial interferences upon the other.

Id. at 90. Consequently, Ms. Perry's claim is not ripe for adjudication, and the district court properly dismissed it. And because Ms. Perry has no justiciable claim herself, she cannot represent the class she proposes. Bailey v. Patterson, 369 U.S. 31, 32-33 (1962) ("[Plaintiffs] cannot represent a class of whom they are not a part.").

_____

**4** We are, of course, free to affirm the district court's judgment on grounds that were not addressed below. McMahan v. International Ass'n of Bridge, Structural & Ornamental Iron Workers, 964 F.2d 1462, 1467 (4th Cir. 1992) (citing Blum v. Bacon, 457 U.S. 132, 137 n.5 (1982)).

7

III.

Perry appeals the district court's Rule 12(b)(6) dismissal of his state-law claim for intentional infliction of emotional distress (IIED). To establish such a claim under Virginia law, a plaintiff must show the following: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe. Womack v. Eldridge, 210 S.E.2d 145, 148 (Va. 1974). Further, a court is authorized to determine at the outset of the case whether the conduct alleged is outrageous enough to support a claim for IIED. Id.

Here, the district court correctly determined that the conduct of which Perry complains simply is not "outrageous" under Virginia law. Indeed, it is the rare case that will satisfy the outrageousness standard:

> Even if a defendant has intended to inflict emotional distress, or his conduct is characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort, the requirement of [outrageousness] has not been satisfied.

Russo v. White, 400 S.E.2d 160, 162 (Va. 1991). At bottom, Perry alleges that various defendants failed to notify him that he had been classified as a child abuser, and that they intentionally covered up this failure. Assuming, as we must on review of a Rule 12(b)(6) dismissal, that Perry's allegations are true, we agree with the district court that they do not allege facts sufficiently "outrageous" to support an IIED claim. See id. (outrageous conduct must be"so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized society") (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Misaddressing an envelope--even intentionally, as Perry alleges--so that the putative recipient will miss the opportunity to have a hearing simply does not rise to the requisite level of outrageousness.

As a result, we affirm the dismissal of Perry's IIED claim.

8

IV.

Perry also argues that the district court erred in granting summary judgment in favor of Oliver on Perry's claim that Oliver was negligent in hiring Musgrove to oversee the Norfolk CPS. [5] Under Virginia law, a plaintiff seeking to prove "negligent hiring" must show that the defendant has been negligent in placing an unfit person--who ultimately harms the plaintiff--in an employment situation involving an unreasonable risk of harm to others. J. v. Victory Tabernacle Baptist Church, 372 S.E.2d 391, 394 (Va. 1988).

Here, Perry has presented no evidence raising a genuine issue as to whether he was harmed by any action that Musgrove took, or failed to take. Instead, he simply alleges that Musgrove oversaw the Norfolk CPS unit, and that this unit mishandled his case. Without any evidence regarding specific actions by or failures of Musgrove, Perry cannot show that Oliver's decision to hire Musgrove--whether or not that hiring decision was unwise--harmed him in any way. The district court was thus correct to grant summary judgment in favor of Oliver as to Perry's negligent hiring claim.

V.

Next, Perry appeals that the district court's grant of summary judgment on his claim that the Norfolk CPS's treatment of his case violated substantive due process. Specifically, he claims that being listed as a child abuser violated a liberty interest and infringed his right to familial privacy. The district court was right to dismiss this claim, and we affirm it on this point.

Unlike the procedural component of the Fourteenth Amendment's Due Process Clause--which requires states to employ adequate procedures when they deprive a citizen of a liberty, or property interest

_____

[5] Perry originally added an allegation that Oliver was negligent in retaining Musgrove after he had been hired. The district court concluded that Virginia does not recognize the tort of "negligent retention." See Dixon v. Denny's Inc., 957 F. Supp. 792, 797 (E.D. Va. 1996). In any event, Perry has not appealed the dismissal of his negligent retention claim, so we need not address it.

9

--substantive due process analysis ignores procedure and asks whether the substance of a state action is permissible: "The substantive component of the Due Process Clause `bar[s] certain government actions regardless of the fairness of the procedures used to implement them.'" Weller v. Department of Soc. Servs. , 901 F.2d 387, 391 (4th Cir. 1990).

As a result, if Perry's substantive due process claim is to succeed, he would have to show that a state may never--regardless of the procedures it uses--designate an individual as a child abuser and post that designation on a public database. Perry cannot make this showing. This court has explained that there is no constitutional right to be free from child abuse investigations. Hodge v. Jones, 31 F.3d 157, 164 (4th Cir. 1994). Further, state publication of information regarding child abuse or neglect to entities authorized by law to receive such reports likewise does not violate substantive due process. Wildauer v. Frederick County, 993 F.2d 369, 373 (4th Cir. 1993). Thus, whatever liberty interests Perry may have in not being labeled a child abuser or in the privacy of his family life, substantive due process does not prohibit the Norfolk CPS from posting Perry's name on the CANIS registry.

VI.

Perry also contends that the City Defendants violated procedural due process by failing to notify him of his right to a hearing, at which he could have contested the finding that he had abused his son, all before his name was listed on the CANIS directory. Not only does Perry complain of the defendants' failure to give proper notice in his case, but he further argues that the system by which the Norfolk CPS notifies all child abuse suspects of their hearing rights is constitutionally deficient. Specifically, Perry contends that due process requires such notices to be sent by certified mail or to be served personally on child abuse suspects, rather than being sent by regular mail alone. We disagree and affirm the district court.[6]

_____

[6] As an initial matter, we note that the district court based its grant of summary judgment on its determination that each defendant was, as to each of Perry's due process claims, entitled to either qualified or sovereign immunity. Because we conclude that Perry's due process claims fail on their merits, we need not reach the various immunity questions at issue here.

10

A.

For purposes of our analysis, we assume that Perry does have a liberty interest in not being listed as a child abuser in the CANIS registry, an assumption that appears reasonable because this listing indirectly cost him his job. Cf. Paul v. Davis , 424 U.S. 693, 701 (1976) (stigma of defamation by a government implicates no liberty interest "apart from some more tangible interests such as employment") (emphasis added). If a liberty interest is implicated, due process requires that Perry be given a hearing to contest the determination that he was a child abuser before his name could be listed in the CANIS registry. See Matthews v. Eldridge, 424 U.S. 319, 333 (1976) ("some form of hearing is required before an individual is finally deprived" of a protected interest). Manifestly, then, Perry was entitled to timely notice of this required hearing:"No `process,' however thorough, can provide what is `due' without notice to those who stand to lose out thereby." Lane Hollow Coal Co. v. DOWCP, 137 F.3d 799, 807 (4th Cir. 1998).

There is no question that Perry did not receive notice of the hearing at which he could have contested his status as a child abuser. The letter that was to notify him of this hearing was misaddressed and, as a result, was never delivered to him. The question thus becomes whether the circumstances under which this particular failure of notice occurred amount to a "deprivation" of Perry's liberty interest in violation of the Due Process Clause of the Fourteenth Amendment. See U.S. Const. amend. XIV ("nor shall any State deprive any person of life, liberty, or property, without due process of law") (emphasis added). Such a deprivation is necessary to support a§ 1983 claim. See Daniels v. Williams, 474 U.S. 327, 332 (1986).

Perry has presented no evidence suggesting that his notification letter was intentionally misaddressed. Instead, it appears that this mistake was the result of simple negligence. The Supreme Court has made clear that a state actor's negligence cannot work an unconstitutional deprivation of a citizen's liberty or property interests: "We conclude that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Id. at 328. As a result, Perry's claim that he was

11

denied due process because of the Norfolk CPS's failure to properly address his letter must fail.

B.

Perry also contests the adequacy of the Norfolk CPS's notification system itself. Specifically, he contends that by sending notices via regular mail--rather than by certified mail or personal service--the Norfolk CPS failed to employ a method of notification that was reasonably certain to notify citizens of their right to a hearing. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

In support of this argument, Perry relies on the Supreme Court's decision in Greene v. Lindsey, 456 U.S. 444 (1982). In Greene, the Court held that Kentucky's practice of posting warnings of pending evictions on apartment doors did not satisfy the notice standard of Mullane, and was thus constitutionally deficient. Id. at 453-54. The Court grounded its holding primarily on the testimony of process servers, who had observed that the notices were"`not infrequently' removed by children or other tenants before they could have their intended effect." Id. at 453. Under these circumstances, the Court concluded that posting "cannot be considered a`reliable means of acquainting interested parties of the fact that their rights are before the courts.'" Id. at 454 (quoting Mullane , 339 U.S. at 315).

Analogizing to Greene, Perry argues that his failure to receive notice proves that the system of sending hearing notices by regular mail is deficient. But, in contrast to the evidence of "not infrequent" notice failure presented in Greene, Perry has presented no evidence that the system employed by the Norfolk CPS has failed to notify anyone--other than himself--of his right to a hearing. Evidence that the system has failed only a single time does not support the conclusion that the Norfolk CPS's system is "not reasonably calculated, under all circumstances" to deliver notice. See Mullane, 339 U.S. at 314. Even a perfect system, if negligently administered in a single instance, will fail to provide notice in that case.

12

It is telling that the <u>Greene</u> Court urged Kentucky to adopt precisely the system of which Perry now complains:

> [T]he mails provide an efficient and inexpensive means of communication upon which prudent men will ordinarily rely in the conduct of important affairs. Notice by mail in the circumstances of this case would surely go a long way toward providing the constitutionally required assurance that the State has not allowed its power to be invoked against a person who has had no opportunity to present a defense despite a continuing interest in the resolution of the controversy.

<u>Greene</u>, 456 U.S. at 455 (internal quotation marks and citations omitted). Consequently, Perry can draw no support for his position from <u>Greene</u>; in fact, that case demonstrates that his procedural due process argument must fail.

VII.

Finally, the Perrys appeal the district court's refusal to certify the classes they have proposed. <u>See</u> Part I, <u>supra</u>. The district court refused to certify the classes because the Perrys did not produce any evidence suggesting that there are <u>any</u> members in the proposed classes, other than themselves.

A plaintiff seeking class certification must, at a minimum, produce some type of evidence suggesting that a class exists. <u>See Doe v. Charleston Area Medical Ctr.</u>, 529 F.2d 638, 645 (4th Cir. 1975) (informal survey indicating that seventy women sought abortions outside West Virginia is sufficient proof of class's existence). Because the Perrys did not come forward with proof of any type regarding the existence of other potential class members, the district court was within its discretion to refuse to certify the Perrys' proposed classes.

VIII.

For the reasons given above, we affirm the district court's orders disposing of the Perrys' claims against all defendants.

<u>AFFIRMED</u>

13