Carol MUSE, Plaintiff,

v.

Stephen SCHLEIDEN,
et al., Defendants.

No. 1:04CV880.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 17, 2004.

David L. Marks, Fairfax, VA, for Plaintiff.

Thomas Omar Lawson, Lawson Kipp & Forbes, Fairfax, VA, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this diversity suit, plaintiff Carol Muse, a Maryland resident, sues Deputy Stephen Schleiden, a Virginia resident, and the Loudoun County Sheriff's Office (LCSO) for damages arising from an accident caused when Deputy Schleiden negligently entered an intersection against a red light while responding to a domestic violence call. At issue on defendants' motion for summary judgment is whether defendants are entitled to sovereign immunity from suit when, at the time of the accident, Deputy Schleiden was actively responding to a domestic violence call that he understood to be an attack by an "out of control" daughter on her father.

For the reasons that follow, defendants' summary judgment motion must be granted as the undisputed material facts reflect that Deputy Schleiden, unlike a driver in routine traffic, was required to exercise discretion to "make difficult judgments about the best means of effectuating [a] governmental purpose by embracing special risks in an emergency situation."[1] Colby v. Boyden, 241 Va. 125, 400 S.E.2d 184, 188 (1991).

### I.[2]

At approximately 10:00 p.m. on the evening of August 9, 2002,[3] Deputy Schleiden received a priority 4 dispatch calling him to the scene of a domestic violence dispute. The dispatch reflected that the caller's 14-year-old daughter had "struck him in the face," was standing next to him while he was on the phone, and was "out of control." Given this, Deputy Schleiden, a former dispatcher himself, concluded that the crime of domestic assault "was in progress or had just occurred," and that the call was properly categorized as a priority 2 or 3 domestic assault rather than a priority 4 juvenile complaint.[4]

1. Plaintiff has also filed a motion to amend the complaint to include a claim for gross negligence which must be denied because neither the record facts nor the allegations of the amended complaint support such a claim.

2. The record reflects the following largely undisputed facts and where disputes exist they are identified as immaterial or construed favorably to plaintiff, as required. See Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (when reviewing a motion for summary judgment, courts must view the facts in a light most favorable to the non-moving party).

3. The precise date of the accident is unclear from the record. While the complaint and the parties' briefs state that the accident occurred on August 10, 2002, the police report filed by Schleiden within a few days of the accident, his deposition, and plaintiff's written notice of claim to the county reflect that the accident occurred on August 9, 2002. This lack of clarity as to the date of the accident is not material to the immunity issue presented.

4. The LCSO's dispatchers assign a priority response number along a spectrum from the most urgent, "priority 1," to the least urgent, "priority 9." Deputy Schleiden testified in his deposition that priorities 1, 2, 3, and 4 have the potential to affect "life, limb, or property" and that priorities 1 and 2 include incidents with a high probability of death or serious bodily injury. For example, a priority 1 call might indicate a homicide, robbery, or burglary in progress. A priority 2 call often refers to a fight or assault in progress. De-

Because Deputy Schleiden believed that the assault might still be in progress, he sought, as he put it, to "respond as rapidly as possible." Deputy Schleiden testified during his deposition that, pursuant to the LCSO's code response system, he had discretion whether or not to use his emergency lights and siren in responding to the call.[5] Yet, knowing that nighttime sirens might create a disturbance or alert the parties to his approach and because he was less than a mile from the call location at the time he received the dispatch, Deputy Schleiden exercised his discretion not to activate his emergency equipment and to follow the rules of the road.

While traveling westbound on Ashburn Farm Parkway en route to the call location, Deputy Schleiden stopped at a red light at the intersection between Ashburn Farm Parkway and Clairborne Parkway. Traveling with Deputy Schleiden at the time were a television news reporter and cameraman participating in a "ride along."[6] At the red light, Deputy Schleid-

en turned to the reporter to explain the nature of the call and that it "might have been miscategorized by the dispatcher." While turned toward the reporter, he believed he saw the light turn from red to green. Thus, he began to proceed through the intersection. Not until Deputy Schleiden had entered the intersection did he realize that the light controlling his lane was, in fact, still red. At the same time, plaintiff was traveling southbound on Clairborne Parkway. Seeing the green light controlling her lane, plaintiff entered the intersection and collided with Deputy Schleiden's cruiser in the middle of the intersection. Specifically, plaintiff's vehicle struck the rear passenger side of Deputy Schleiden's cruiser.

Approximately two years later on July 29, 2004, plaintiff filed this negligence suit against Deputy Schleiden and the LCSO for damages suffered in connection with the August 9, 2002 accident. On November 8, 2004, plaintiff filed a motion to

---

pending on the severity of the circumstances, a priority 3 call might involve a domestic dispute, a juvenile complaint, or a business or residential alarm. A priority 4 call, which is very similar to a priority 3 call, could also indicate a juvenile complaint as well as destruction of property or disorderly conduct. According to Deputy Schleiden, the priority system is imprecise and sometimes results in miscategorized calls. In this case, because the dispatch notes reflected that the caller's daughter was standing next to him as he spoke on the phone, had hit him once in the face, and was "out of control," Deputy Schleiden believed that the call properly was classified as priority 2 or 3 rather than priority 4.

5. The nine levels of the priority response system do not correlate directly with a deputy's discretion to expedite to the location of a call. Instead, LCSO General Order 502 provides that "[d]uring normal day-to-day Sheriff operations, many calls are received from citizens, which concern mostly matters of routine services and complaints. In the majority of

these calls, the situation reported is neither urgent nor of an emergency nature; hence, a deputy responding to such an assignment *would not* be justified in operating the deputies [sic] vehicle in a manner other than that defined as normal driving." Yet, in other cases, a deputy must exercise his discretion and *"may or may not* be justified to expedite to the location of a call, depending upon (i) the nature of the call, (ii) the seriousness of the situation, and (iii) the variable conditions of traffic congestion, weather, road surface, etc., present at the time." Plaintiff disputes Deputy Schleiden's interpretation of his department's policy and argues that he did not have discretion to expedite to the location of the call. Her arguments are addressed *infra* in Section II of the Memorandum Opinion.

6. A "ride-along" is a governmentally-sanctioned opportunity for a civilian to ride with department deputies to observe the deputies in the performance of their duties. In this case, a reporter and cameraman were permitted to ride with Deputy Schleiden to research a story focusing on deputies' on-duty stress.

amend the complaint to include a claim for gross negligence. On the same date, defendants filed a motion to dismiss and/or for summary judgment arguing that (i) Deputy Schleiden is entitled to sovereign immunity from suit because the accident occurred when he was operating his vehicle in response to an emergency call, a function requiring the exercise of judgment and discretion, and (ii) that the complaint fails to state a claim against the LCSO because Virginia does not recognize a cause of action for negligent supervision. Plaintiff filed an opposition arguing (i) that Deputy Schleiden is not entitled to the protection of sovereign immunity because, at the time of the accident, he was engaged only in an "ordinary driving situation," (ii) that Deputy Schleiden's acts constituted gross negligence and thus are not entitled to immunity,[7] and (iii) that while Virginia concededly does not recognize a claim for negligent supervision, the complaint also states a direct negligence claim against the LCSO. Following the filing of defendant's reply and a hearing, the matter was taken under advisement.

## II.

### 1. Deputy Schleiden—Ordinary Negligence

Deputy Schleiden has raised 'the defense of sovereign immunity to plaintiff's ordinary negligence claim. To be sure, the line demarcating the boundary of sovereign immunity in Virginia is indistinct; indeed, at least one Supreme Court of Virginia jurist has described the case law applying the sovereign immunity doctrine as an "immunity-liability patchwork" and a "maze of confusion." *Hinchey v. Ogden*, 226 Va. 234, 307 S.E.2d 891, 895 (1983) (Cochran, J., dissenting). The inability to draw precise lines in this context is understandable; it is difficult, if not impossible, for the human mind to conjure up all possible factual scenarios in emergency response situations that might give rise to the need to shield the state or its employees from liability. Even so, it is possible to distill from pertinent Virginia caselaw the analytical framework and principles that enable courts to determine the boundaries of sovereign immunity in specific situations.

In this respect, analysis properly begins with the recognition that the Supreme Court of Virginia has established a four-factor test to determine whether an employee of a sovereign entity, like Deputy Schleiden, is entitled to invoke the state's sovereign immunity from ordinary negligence claims.[8] *See Messina v. Burden*, 228 Va. 301, 321 S.E.2d 657 (1984). Specifically, the four factors are: (i) the function performed by the employee; (ii) the extent of the government's interest and involvement in that function; (iii) the degree of control and direction the government exercises over the employee; and (iv) whether the act performed involves the use of judgment and discretion. *Id.* at 663 (citing *James v. Jane*, 221 Va. 43, 282 S.E.2d 864, 869 (1980)). Properly applied, these factors aim to limit sovereign immunity to situations where its application serves the important goals of such immunity, including, most relevant here, to "assur[e] that citizens will be willing to take public jobs," and to "eliminat[e] public in-

---

**7.** As noted, on November 8, 2004, plaintiff filed a motion to amend the complaint to include a claim for gross negligence, which motion is also addressed here.

**8.** It is settled that for an individual governmental official or employee, the defense of sovereign immunity is qualified. Thus, the employee may still be held liable for claims of gross negligence. *See James v. Jane*, 221 Va. 43, 282 S.E.2d 864, 869 (1980).

convenience and danger that might spring from officials being fearful to act."[9]

The parties in this case do not dispute that the first three factors are satisfied; instead, they focus sharply on whether the act at issue—responding to the domestic violence call—involved the use of judgment and discretion. In addressing this factor, the Supreme Court of Virginia, in cases involving emergency responders, has distinguished between situations that require "ordinary driving ... in routine traffic" and those exigent circumstances that require an employee to exercise judgment and discretion to "make difficult judgments about the best means of effectuating [a] governmental purpose by embracing special risks in an emergency situation." *See Friday–Spivey v. Collier*, 268 Va. 384, 601 S.E.2d 591, 595 (2004); *Colby v. Boyden*, 241 Va. 125, 400 S.E.2d 184, 187 (1991). Only emergency response drivers in the latter situations are deserving of sovereign immunity. For example, in *Colby v. Boyden*, the Supreme Court of Virginia held that a police officer in pursuit of a traffic offender, with his emergency lights and siren engaged, was immune from ordinary negligence claims for damages caused when the officer entered an intersection against a red light and collided with plaintiff's vehicle. The court reasoned that, unlike a driver in routine traffic, a police officer engaged in vehicular pursuit "must make prompt, original, and crucial decisions in a highly stressful situation." *Id.* at 187. Further, the driver must embrace "special risks in an emergency situation" and must make discretionary decisions "balancing grave personal risks, public safety concerns, and the need to achieve the governmental objective." *Id.* Indeed, the initial decision to undertake the pursuit itself involves the exercise of discretion. *Id.; see also Nationwide Mut. Ins. Co. v. Hylton*, 260 Va. 56, 530 S.E.2d 421 (2000) (holding that trooper entitled to sovereign immunity when, at the time of the accident, he had decided to apprehend a traffic violator but had not yet begun to pursue him). Similarly, in *National Railroad Passenger Corp. v. Catlett Volunteer Fire Co.*, 241 Va. 402, 404 S.E.2d 216 (1991), the Supreme Court of Virginia held that a fireman en route to extinguish a fire could not be held liable for an accident that resulted when he drove his fire truck across a set of railroad tracks without stopping because the exercise of judgment and discretion required to respond rapidly to a fire could not be distinguished from the act of running a red light to apprehend a traffic offender.

In contrast, sovereign immunity does not extend to "ordinary driving situations ... in routine traffic." *Friday–Spivey*, 601 S.E.2d at 594 (citations and quotations omitted). For example, in *Heider v. Clemons*, 241 Va. 143, 400 S.E.2d 190 (1991), the Supreme Court of Virginia held that a deputy sheriff who had completed serving process at a residence was not immune from suit when he pulled into traffic and collided with a motorcycle. The court reasoned that "the simple operation of an automobile did not involve special risks ... or the exercise of judgment or discretion about the proper means of effectuating the governmental purpose of the driver's employer." *Id.* at 191. The defendant in *Heider* had completed his

---

9. *Messina,* 321 S.E.2d at 660 ("[T]he doctrine of sovereign immunity serves a multitude of purposes including but not limited to protecting the public purse, providing for smooth operation of government, eliminating public inconvenience and danger that might spring from officials being fearful to act, assuring that citizens will be willing to take public jobs, and preventing citizens from improperly influencing the conduct of governmental affairs through the threat or use of vexatious litigation.").

governmental purpose and was leaving the scene. Thus, in holding that the defendant was not entitled to sovereign immunity, the court concluded that the defense of sovereign immunity applies only to "acts of judgment and discretion which are necessary to the performance of the governmental function itself." *Id.* at 191. Yet, it is important to note that the Supreme Court of Virginia recently made clear in *Friday–Spivey* that an emergency vehicle driver is not automatically immune merely because the driver is en route to accomplish a governmental purpose; rather, the response must be under "such exigent circumstances that the government employee responding must use a degree of judgment and discretion beyond ordinary driving situations in routine traffic to accomplish that governmental mission." *Id.* at 595. Thus, the *Friday–Spivey* court held that the operation of a fire truck did not require the exercise of judgment and discretion when the driver was en route to a priority 2 [10] "public service call" regarding an infant locked in a vehicle at that location. *Id.* at 594. Significantly, based on the information available to the driver at the time of the response, there "was no danger" involved in the call to which he was responding and department guidelines mandated that he respond to the call "in a nonemergency manner," without lights and sirens, and that he "obey all traffic regulations." *Id.* The court found that the facts of the case required no significant judgment or discretion beyond that required for "ordinary driving situations in routine traffic," and distinguished that case from the "special risks" inherent in the pursuit of a traffic offender or an emergency response to the scene of a fire. *Id.* at 595.

In this case, unlike the defendants in *Friday–Spivey* and *Heider*, Deputy Schleiden was not engaged in ordinary driving in routine traffic, but rather was responding to an emergency call that required him to exercise his judgment and discretion in deciding the best means of response. Unlike the deputy sheriff in *Heider*, Deputy Schleiden was not leaving the site of a call, but responding to one, which response was necessary to the performance of a governmental function. And different from the emergency vehicle driver in *Friday–Spivey*, but similar to the drivers in *Colby*, *Hylton*, or *National Railroad*, Deputy Schleiden was responding to an emergency call that required a rapid response to effectuate that governmental function. For example, in *Friday–Spivey*, the Supreme Court of Virginia emphasized (i) that the call for the infant locked in a car was considered a "public service call," and (ii) that "there was no danger involved." Indeed, the driver testified that, according to his regulations, there was no difference "in the way you respond to a call for a cat in a tree versus an infant locked in a car." *Id.* at 594. In this case, however, from the facts known to Deputy Schleiden at the time he responded to the domestic violence call, he believed that he was responding to a scene where "a crime had been committed" and that involved ongoing danger. In fact, he believed that an assault might still be in progress and that the caller's 14–year–old daughter was "out of control," requiring him to "respond as rapidly as possible." Thus, the exigent circumstances of the call necessitated that Deputy Schleiden exercise a degree of judgment and discretion to accomplish the governmental mission beyond that required to answer a routine

---

**10.** A Priority 2 call for the Fairfax County Fire and Rescue Department may involve "anything from a cat in a tree to a leaky water pipe." *Friday–Spivey*, 601 S.E.2d at 594.

public service call. *Friday–Spivey*, 601 S.E.2d at 595.

Further, while Deputy Schleiden did not choose to activate his emergency equipment, he had the discretion to do so. Significantly, in *Friday–Spivey*, on the facts known to the driver at the time he responded, that driver did not have discretion to employ his emergency equipment; rather, he was *"required* to obey all traffic regulations," and he was under a *"mandate* to 'respond in a nonemergency manner.'" *Id.* at 594–95 (emphasis added). In contrast, Deputy Schleiden had discretion whether to use his emergency equipment to expedite to the call location or to follow the rules of the road, requiring him to "balanc[e] grave personal risks, public safety concerns, and the need to achieve the governmental objective." *Colby*, 400 S.E.2d at 187. Knowing that he was in close proximity to the call—less than one mile away—and aware that nighttime sirens might create a disturbance (and alert others to his approach), Deputy Schleiden chose to proceed without his emergency equipment. In these circumstances, sovereign immunity is necessary to protect the exercise of discretion and judgment to determine the best method of response in such an emergency situation, including whether to activate one's emergency equipment.

It is tempting to conclude, as plaintiff does, that the crucial sovereign immunity inquiry is whether the emergency vehicle driver has engaged his emergency equipment and that all other driving is simply "ordinary driving" not protected by sovereign immunity. To be sure, in *Friday–Spivey* the defendant was required to respond in a non-emergency manner and was not entitled to sovereign immunity,

and in *Colby* and *National Railroad* the defendants employed their emergency lights and sirens and were immune. *But see Hylton*, 260 Va. 56, 530 S.E.2d 421 (holding that trooper entitled to immunity when accident occurred immediately after he had decided to apprehend a traffic violator but before initiating pursuit). Yet, a rule that makes sovereign immunity turn on whether emergency equipment is actually activated would ignore the teachings of the Supreme Court of Virginia on this issue and convert the sovereign immunity issue into a "flip of the switch" question. Emergency vehicle drivers would be presented with a simple, but inappropriate choice: activate the emergency equipment and ensure sovereign immunity protection or choose not to do so and risk a negligence suit. Sovereign immunity cannot be invoked by the "flip of a switch," but rather turns on whether the situation presents a genuine need for judgment and discretion on the part of the emergency responder. The caselaw reflects this principle. In *Friday–Spivey*, the facts known to the driver did not pose a danger and, as such, the driver was required "to respond in a nonemergency manner and conform to all [ ] traffic regulations." *Friday–Spivey*, 601 S.E.2d at 595. In this case, however, as in *Colby*, *National Railroad*, and *Hylton*, the facts known to Deputy Schleiden involved sufficient exigency that he had discretion whether to employ his emergency equipment, which, balancing the facts known to him at the time, he chose not to do. Sovereign immunity protection is necessary in such circumstances to preserve the emergency responder's discretion to balance a variety of special risks in making the decision on how best to respond to an emergency call.[11] For example, activating emergency equipment might alert a crimi-

---

11. *Cf. Colby*, 400 S.E.2d at 187 ("The exercise of discretion is involved even in the initial decision to undertake the pursuit . . . .").

nal to a deputy's arrival or create a disturbance by drawing attention to the scene of the call. Indeed, the decision to employ emergency equipment might also create a risk that accidents will occur as the distraction of the loud sound of a siren or bright flash of lights might cause other drivers to brake abruptly or to become distracted from their driving. An emergency responder like Deputy Schleiden must weigh these factors against the benefits that would result from arriving, in some cases, only a few seconds earlier than if the officer had not activated his emergency response equipment and instead arrived as rapidly as possible while following the ordinary traffic rules. Just as it is important to protect the exercise of an officer's judgment and discretion when involved in a high speed pursuit, it is equally important to protect a responder's discretion to balance the benefits and costs of activating emergency equipment and the exigency of arriving at a potentially violent scene as rapidly as possible. To conclude otherwise would undermine a key purpose for extending sovereign immunity to a county's emergency responders, *i.e.*, to eliminate public inconvenience and danger that might result from such responders being reluctant to act for fear of damaging lawsuits.[12] Thus, to immunize an emergency vehicle driver's "difficult judgments about the best means of effectuating the governmental purpose by embracing special risks in an emergency situation," sovereign immunity must protect the driver's response whether or not he or she chooses to activate the emergency equipment. *Colby*, 400 S.E.2d at 187. Accordingly, Deputy Schleiden is appropriately entitled to sovereign immunity for all negligent acts taken while responding to the emergency domestic assault call at issue here.

In an attempt to avoid summary judgment, plaintiff argues that it is a disputed issue of fact whether Deputy Schleiden had the discretion to activate his emergency equipment in response to the domestic violence call. Plaintiff reasons that, like the defendant in *Friday–Spivey*, departmental policies required Deputy Schleiden to respond in a non-emergency manner and to conform to all traffic regulations; thus, he was merely engaged in ordinary driving in routine traffic. Yet, plaintiff's argument in this respect, closely examined, creates no material disputed issue of fact.[13]

To begin with, the facts are clear: Deputy Schleiden testified in response to repeated questions in his deposition that he did have the discretion to respond in an emergency manner, but exercised his dis-

12. As the Supreme Court of Virginia recognized in *Colby*, it was important to grant sovereign immunity to officers pursuing traffic offenders because a contrary result "would inhibit law enforcement officers faced with similar decisions regarding vehicular pursuit in the future." *Colby*, 400 S.E.2d at 187.

13. Not decided here is whether plaintiff would be entitled to have a jury resolve any disputed issues of fact, as no such issues are presented. Yet, it is worth noting that in Virginia sovereign immunity, as a defensive plea in bar, is an issue for the court, which may exercise its discretion to hold an evidentiary hearing on the issues raised. *See Tomlin v. McKenzie*, 251 Va. 478, 468 S.E.2d 882

(1996). In federal court, the Seventh Amendment may, in appropriate cases, require that a jury resolve any disputed material issues of fact with regard to the sovereign immunity issue. *See Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 533, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) (holding that, despite state law allocating immunity decision to the judge not the jury, the Seventh Amendment jury trial right outweighed state's interests). Nevertheless, because the record does not reflect any material disputed issues of fact relating to sovereign immunity, it is unnecessary to reach or decide whether plaintiff's Seventh Amendment right should trump Virginia's decision to allocate this decision to a judge.

cretion not to do so. Significantly, plaintiff offers no affidavits, deposition testimony, or other affirmative evidence to contradict Deputy Schleiden's testimony. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (noting that to defeat a motion for summary judgment, the non-moving party "may not rest upon mere allegations or denials ... but must set forth specific facts showing that there is a genuine issue [of material fact].") (quoting Rule 56(e), Fed.R.Civ.P.). Instead, plaintiff's argument relies on a construction of LCSO's departmental policy governing emergency response procedures. Yet, she fails to create an issue of fact because the policy, although less than crystal clear, plainly supports Deputy Schleiden's conclusion that he had the discretion he claims.

LCSO General Order 502, in providing guidelines for emergency response procedures, distinguishes between two categories of calls. First, it identifies that during "day-to day Sheriff operations" most calls involve "matters of routine services and complaints," the majority of which are "neither urgent nor of an emergency nature." In such situations, a responding deputy "*would not* be justified in operating the deputies [sic] vehicle in a manner other than that defined as normal driving,"[14] But not all calls involve routine services or complaints of a non-emergency nature. Rather, in other urgent or emergency situations, a deputy must exercise his judgment and discretion and "*may or may not* be justified to expedite to the location of a call, depending upon (1) the nature of the call, (2) the seriousness of the situation, and (3) the variable conditions of traffic congestion, weather, road surface, etc., present at the time." Seeking to guide officers in the exercise of this discretion, the policy further provides that because "protection of human life is paramount, the responding deputy must bear in mind that the response objective is to get to the location of the occurrence as soon as possible, safely, without danger to the deputy or to others." Thus, the policy plainly confirms Deputy Schleiden's testimony that in responding to a domestic violence call (not a routine service or complaint) he had the discretion to determine the best response to exigent circumstances, including activation of his emergency equipment to expedite to the scene of the call.

In response, relying on a narrow interpretation of a single line in the policy, plaintiff argues that Loudoun County deputies may only activate their emergency equipment in situations that involve a high probability of death or serious bodily injury.[15] Indeed, the General Order further

---

14. *See supra* note 5.

15. Plaintiff's reliance on the priority 4 categorization of the call is also unpersuasive as it is immaterial. It is clear from the record that the priority system does not directly control whether an LCSO deputy may/must engage in emergency response driving to arrive more quickly at a call location. Moreover, Deputy Schleiden has testified that calls are often miscategorized and that he believed, as a former dispatcher, that the call should have been classified at a higher priority level to reflect the ongoing potential for violence.

Nor is it significant that Deputy Schleiden admitted in his deposition that he was not engaged in "Response Driving," defined in LCSO General Order 502 to include "[t]hat driving of an expeditious nature which relates to the effort made in a sheriff's vehicle to proceed to the location of an emergency in a manner consistent with the provisions of Section 46.2–920 of the Code of Virginia, to include the usage of emergency lighting equipment, siren, and having due regard for the safety of persons and property." The decision to engage in response driving does not define an emergency; rather, in an emergency, a deputy may engage in response driving. Thus, the fact that Deputy Schleiden exercised his discretion not to engage in response driving does not indicate that he was not

directs that a response must be "immediate and swift," in "any situation in which there is a high probability of death or serious bodily injury to a person." Yet, while the policy plainly encourages deputies to exercise their discretion to engage in response driving in these circumstances, this is the extreme case. This direction does not negate the officer's discretion to respond in an emergency manner depending on the call's nature, its seriousness, and other variable conditions. If it did so, it would prohibit an expedited response to a fire threatening property, but not life, a theft of an empty home, or pursuit of a traffic offender, despite the need to respond quickly in each situation. Nonetheless, in this case, the domestic violence call at issue did involve potentially ongoing violence. Thus, even under plaintiff's restrictive reading, the policy comports with Deputy Schleiden's testimony that he had discretion whether to activate his emergency equipment to expedite to the call. Plaintiff has plainly failed to establish a material issue of fact in this regard.[16]

■ There being no material issues of fact in dispute, summary judgment is appropriate. Where, as here, the facts of the case evince "such exigent circumstances that the government employee responding must use a degree of judgment and discretion beyond ordinary driving situations in

routine traffic to accomplish that governmental mission," sovereign immunity appropriately applies to protect the driver from suits for ordinary negligence. *Friday–Spivey*, 601 S.E.2d at 595. This principle holds whether or not a defendant has exercised his discretion to expedite to the location of the call. Accordingly, plaintiff's ordinary negligence claim against Deputy Schleiden must fail.

### 2. Deputy Schleiden—Gross Negligence

■ Under Virginia law, an employee of a sovereign entity is entitled to sovereign immunity only from claims for ordinary negligence, not gross negligence. *James*, 282 S.E.2d at 869. Plaintiff did not allege in her complaint a claim for gross negligence, but now seeks to amend her complaint to add such a claim against Deputy Schleiden. Yet, this attempt to amend the complaint would be futile as neither the allegations in the amended complaint, which are comprised of wholesale legal conclusions and do not allege any new facts, nor the undisputed facts in the record support a claim for gross negligence. Instead, the facts support only a simple negligence claim.

■ The record reflects that Deputy Schleiden proceeded into the intersection only once he believed he saw the light change from red to green, and that he was

responding under exigent circumstances sufficient to warrant the protection of sovereign immunity.

16. Moreover, even assuming the interpretation of the LCSO policy were a disputed issue of fact, the dispute is not material. While the LCSO policy is instructive, it is not determinative. Sovereign immunity does not ultimately depend on whether a departmental policy gives an emergency vehicle driver discretion to activate his emergency lights and sirens. Put differently, if a policy granted deputies unfettered discretion to engage in emergency response driving, such a policy would not extend sovereign immunity's pro-

tection to any and every driving situation. Nor would a policy that denied officers any discretion to activate their emergency response equipment nullify the sovereign immunity bar in situations that reasonably require officers to exercise their judgment to balance the special risks associated with responding to an emergency. Rather, the policy is merely instructive and gives guidance to the immunity determination to the extent that it reflects that, in the judgment of expert persons, certain circumstances constitute an emergency situation that would warrant an officer to engage in emergency response driving.

driving only "5–7 miles per hour" at the time of impact. Had Deputy Schleiden watched the light at all times instead of relying on his peripheral vision while distracted by a conversation with his passenger, he almost certainly would have seen the red light and would not have entered the intersection. To be sure, an ordinarily prudent person would have been more attentive and would not have entered an intersection on a red light. Nonetheless, the facts in the record reflect that Deputy Schleiden's acts amounted to no more than ordinary negligence and do not demonstrate an "utter disregard of prudence amounting to complete neglect of the safety of another." *See Colby*, 400 S.E.2d at 189; *Finney v. Finney*, 203 Va. 530, 125 S.E.2d 191 (1962) (overturning gross negligence verdict when, though driver could have been more attentive, driver caused an accident when she looked down at her child before entering intersection with inoperative traffic light).

Thus, because plaintiff's amended claim would be futile, the motion for leave to amend must be denied. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir.1999) ("The law is well settled 'that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment *would be futile.*'") (citation omitted) (emphasis added); *Samuels v. Agency Ins. Co. of Md., Inc.*, 215 F.3d 1321, 2000 WL 627645, at *1 (4th Cir.2000) (unpublished disposition) (citing *Bauchman v. West High Sch.*, 132 F.3d 542, 562 (10th Cir.1997)) (affirming denial of leave to amend where amendment would be futile).

### 3. Loudoun County Sheriff's Office

 Plaintiff also alleges a negligence claim against the LCSO on two theories: (i) negligent supervision of Deputy Schleiden and (ii) negligently causing a television news crew to ride along in Deputy Schleiden's patrol car, causing him to become distracted and resulting in an accident. Neither theory is sufficient to withstand a motion for summary judgment and both require only brief discussion. First, as plaintiff conceded in her opposition to the motion for summary judgment, her first theory fails because Virginia does not recognize a claim for negligent supervision. *See Chesapeake & Potomac Tel. Co. v. Dowdy*, 235 Va. 55, 365 S.E.2d 751, 754 (1988); *Thompson v. Town of Front Royal*, 117 F.Supp.2d 522, 531 (W.D.Va.2000). Plaintiff's second theory also fails because it is barred by the doctrine of sovereign immunity. Even assuming that causing a civilian to travel in a police car is a negligent act, which seems unlikely, the LCSO, as an entity of Loudoun County, is immune from suit for negligence claims.[17] *See Obenshain v. Halliday*, 504 F.Supp. 946, 953 (E.D.Va.1980) ("In Virginia, counties are immune to actions in tort without statutory consent.") (citing *Fry v. County of Albemarle*, 86 Va. 195, 9 S.E. 1004 (1889)). Thus, plaintiff's claim against the LCSO,

---

**17.** At oral argument, plaintiff's counsel argued that the LCSO is not entitled to sovereign immunity in this case given that it allowed television news reporters to ride along in its cruisers because it did so, not to further a governmental purpose, but for a pecuniary benefit, *i.e.*, to "profit" from positive news coverage. Yet, the distinction between a governmental act and a proprietary act is relevant only to whether a municipality is entitled to sovereign immunity and does not implicate the same question for a county, which enjoys the full immunity of the state. *See Bialk v. Hampton*, 242 Va. 56, 405 S.E.2d 619, 621 (1991) ("[I]f the act in question is done by the municipality for the common good, without the element of corporate benefit or pecuniary profit, it is a governmental act entitled to governmental immunity.").

like her claims against Deputy Schleiden, must also be dismissed on summary judgment.

An appropriate Order will issue.